In re Lawrence MARRA, Sr.

Appeal of Robin KENNEDY
and Viola Kennedy.

In re Lawrence MARRA, Sr.

Appeal of Debtor/Decedent
Lawrence MARRA, Sr.

Nos. 3:CV–94–0303, 3:CV–94–0304.

United States District Court,
M.D. Pennsylvania.

March 30, 1995.

Stephen G. Bresset, Stroudsburg, PA, for Lawrence Marra, Sr.

Ronald Vincent Santora, Hourigan, Kluger, Spohrer & Quinn, P.C., Wilkes–Barre, PA, for Robin Kennedy, Viola Kennedy.

Elwood M. Malos, Easton, PA, David A. Eisenberg, Eisenberg & Van Horn, Allentown, PA, for Lawrence Marra, Jr., Francesca Marra, L.M.J. Inc.

Jeffrey G. Velander, Easton, PA, for Elwood Malos.

George E. Clark, Jr., Trustee, Scranton, PA.

## MEMORANDUM

VANASKIE, District Judge.

On March 1, 1994, Robin and Viola Kennedy (the "Kennedys"), purportedly the sole beneficiaries under the Will of Debtor Lawrence Marra, Sr., deceased, filed a Notice of Appeal from the Bankruptcy Court's Order of February 1, 1994, granting a motion to dismiss the Debtor's/Decedent's Chapter 7 Case.[1] This appeal was docketed to 3:CV–94–0303. Also on March 1, 1994, Attorney Stephen G. Bresset, purporting to represent the Debtor/Decedent, filed a Notice of Appeal from the February 1, 1994 dismissal of the Chapter 7 Case, with Attorney Bresset's appeal being docketed to 3:CV–94–0304.

Elwood M. Malos, Esq., the court-appointed administrator with "sole and exclusive control of the assets of the Estate of Lawrence Marra, Sr., deceased," has moved to vacate and dismiss the appeal taken by Attorney Bresset on the ground that he was not authorized to represent the Debtor/Decedent. Indeed, Malos, as the duly appointed co-administrator of the Debtor/Decedent's probate estate, had moved for the dismissal of the Chapter 7 case. He was joined in his motion by Francesca Marra, a creditor and former wife of the Debtor/Decedent as well as Lawrence Marra, Jr. ("Marra, Jr."), the

---

1. Viola Kennedy is Lawrence Marra, Sr.'s sister. She is co-administrator of his probate estate, but because she is not a Pennsylvania resident she apparently lacks authority over the probate estate property located in Pennsylvania.

Debtor/Decedent's son. The Motion to Dismiss was also adopted by First Star Savings Bank ("First Star"), a creditor in the bankruptcy case.[2] The Chapter 7 Trustee, Attorney George Clark ("Clark"), originally joined in the Motion to Dismiss and then filed an objection to the dismissal, but only as to the recognition of his administrative costs and fees as charges on the bankruptcy estate. (Dkt. Entry 10 at 205–206.)[3]

In accordance with 11 U.S.C. § 707(a), a hearing was held on the Motion to Dismiss on February 1, 1994. After weighing both the benefits and prejudice of dismissal, the Bankruptcy Court granted the Motion to Dismiss. (Dkt. Entry 10 at 203–207.) In reaching its decision the Bankruptcy Court considered that the state court probate proceeding could administer the Debtor/Decedent's property, the Chapter 7 Trustee substantially supported the Motion to Dismiss, the state court Administrator in custody of the subject property, Malos, joined in the Motion to Dismiss, and the bankruptcy concept of giving the debtor a "fresh start" was meaningless where, as in this case, the Debtor is deceased.

After carefully reviewing the record in this case, I concur with the Bankruptcy Court's decision to dismiss the Chapter 7 case. Therefore, I will affirm the Bankruptcy Court's Order.

### BACKGROUND

This matter began as a voluntary reorganization on November 12, 1991, when the Debtor, Lawrence Marra, Sr., filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, et seq.[4] In December, 1991 and January, 1992, Francesca Marra and the Greater Bethlehem Savings and Loan[5] respectively filed Motions to Dismiss. Those motions were later withdrawn.

On March 11, 1992, during the pendency of the Chapter 11 Case, the Debtor/Decedent passed away. On April 1, 1992, First Star moved to dismiss the Chapter 11 case, and on April 3, 1992, Francesca Marra moved for dismissal of the Chapter 11 case. The Bankruptcy Court docket sheet indicates that on October 27, 1992, Marra, Jr., L.M.J., Inc., (Marra, Jr.'s corporation), and Francesca Marra moved to dismiss or convert the Chapter 11 Case. On December 15, 1992, Attorney Bresset, acting as counsel for the Debtor/Decedent, consented to the conversion to Chapter 7, which was effected by Order dated December 17, 1992.[6] Thereafter, George Clark, Esq., was appointed Chapter 7 Trustee.

On July 13, 1993, the Court of Common Pleas of Northampton County appointed Malos to replace Lockwood as the administrator of the Estate of Marra, Sr. with sole and exclusive control of the probate estate's assets. As noted above, also serving in the capacity of co-administrator of Marra, Sr.'s probate estate is Viola Kennedy.

On October 12, 1993, Francesca Marra, Marra, Jr., Malos, and L.M.J. moved to dismiss the Chapter 7 case. The motion was opposed by the Kennedys, as well as by Attorney Bresset, who had been retained by Viola Kennedy to serve as bankruptcy counsel to the probate estate.[7] Underlying the

---

2. This information is taken from the transcript of the February 1, 1994 bankruptcy hearing on this matter, which is included in the record for this case as Docket Entry 10. Throughout this Memorandum the docket entries referred to will be those from case number 94–303. The docket entry numbers in 94–303 are substantially the same as those in case number 94–304. One significant exception is the transcript of the February 1, 1994 proceeding, which is docket entry 11 in case 94–304.

3. Therefore, from a substantive point of view, the Chapter 7 Trustee supported the Motion to Dismiss.

4. The appellees in this matter assert that the Chapter 11 petition was filed to thwart an equitable distribution of marital property which was being pursued at that time by the Debtor/Decedent's ex-wife, Francesca Marra.

5. During the bankruptcy proceedings Greater Bethlehem Savings and Loan became First Star.

6. Subsequent to the death of Marra, Sr., Dominick Lockwood, Esq., was appointed the co-administrator of his estate with authority over the property in question. Lockwood retained Attorney Bresset as bankruptcy counsel for the probate estate.

7. In light of the fact that Malos has been appointed as the administrator with sole and exclusive control of the assets of the probate estate, it is doubtful that Viola Kennedy had authority to retain Bresset to represent the probate estate.

bankruptcy case is a bitter and protracted dispute between the former wife of the Debtor/Decedent and his sole heirs, the Kennedys.

The Debtor/Decedent's estate consists of approximately six hundred (600) properties in approximately forty-two (42) Pennsylvania counties. Many of the properties are subject to mortgages which are presently in default. There are co-owners of a number of properties. In addition, tax liens have been placed on many properties because taxes have not been paid on some properties for an extended period of time. In some instances tax sales were scheduled but have been stayed by the bankruptcy proceedings and by this appeal.

The Debtor/Decedent and Francesca Marra became embroiled in divorce proceedings in Northampton County, Pennsylvania in the late 1980's. The divorce was bifurcated and a divorce decree was entered on February 27, 1989, prior to the filing of the bankruptcy case. The issue of equitable division of marital property is apparently still pending in Northampton County. The Debtor/Decedent was also involved in litigation in Northampton County with Marra, Jr., his son, and L.M.J. Inc., Marra Jr.'s corporation, concerning ownership of various parcels of real estate. This litigation was commenced prior to the bankruptcy filing, and some of this litigation is still unresolved.

There has also been contentious probate proceedings. For example, Francesca Marra petitioned the Northampton County Court to remove Viola Kennedy as co-administrator of the probate estate. This motion was denied, without prejudice, on January 24, 1994. (*See* Answer to Motion to Vacate Appeal (Docket Entry 8), Ex. "A.") It was within this context that the Bankruptcy Court addressed the Motion to Dismiss the Chapter 7 case.

## DISCUSSION

### A. The Kennedys' Appeal of the Bankruptcy Court's Decision (CV–94–303)

A Bankruptcy Court's factual findings are reviewed under a clearly erroneous standard. *In re Siciliano,* 13 F.3d 748, 750 (3rd Cir.1994). In this case, the Kennedys do not dispute the facts found by the Bankruptcy Court; instead, they contest the Bankruptcy Court's ultimate ruling—that dismissal of the bankruptcy case was appropriate under 11 U.S.C. § 707.

The decision whether to grant or deny a motion to dismiss a petition in bankruptcy lies within the discretion of the bankruptcy judge and will be reversed only for abuse of discretion. *In re Zick,* 931 F.2d 1124, 1126 (6th Cir.1991); *In re Atlas Supply Corp.,* 857 F.2d 1061, 1063 (5th Cir.1988). In deciding a Motion to Dismiss, a Bankruptcy Court looks to 11 U.S.C. § 707(a), which allows dismissal "only after notice and a hearing and only for cause." Section 707, however, does not provide the court with an exclusive list of factors to consider in making a determination of whether good cause exists for dismissing a bankruptcy case. *Id.; In re Carroll,* 24 B.R. 83 (Bankr.N.D.Ohio 1982). Instead, the Bankruptcy Court must balance the equities and consider the benefits and prejudice of dismissal. *In re Blue,* 4 B.R. 580 (Bankr.D.Md.1980). *See also In re Brown,* 88 B.R. 280, 284 (Bankr.D.Haw.1988).

Ordinarily, where dismissal will prejudice the creditors it will be denied. *Atlas,* 857 F.2d at 1063; *In re Williams,* 15 B.R. 655 (E.D.Mo.1981), *aff'd,* 696 F.2d 999 (8th Cir.1982). Legal prejudice is found to exist where assets which would otherwise be available to creditors are lost because of the dismissal. *In re Komyathy,* 142 B.R. 755, 757 (Bankr.E.D.Va.1992); *In re Higbee,* 58 B.R. 71, 72 (Bankr.C.D.Ill.1986). Another factor to be weighed is the absence or presence of creditor consent. *Komyathy,* 142 B.R. at 757.

In this case, Francesca Marra, who is described as the Debtor/Decedent's primary creditor, moved for dismissal of the bankruptcy case. Francesca Marra's claims, principally the equitable division of marital property in the divorce case, are fully cognizable and payable in state probate court. Apparently, the only other significant creditor, First Star, supported the Motion to Dismiss in the Bankruptcy Court.[8]

8. The record reflects that First Star adopted the Motion to Dismiss the bankruptcy case and At-

 The Kennedys consistently refer to themselves as "creditors" and argue that as the sole heirs of the Debtor/Decedent's will, they constitute the major creditors of the bankruptcy estate. Bankruptcy is a process by which the property of a debtor is distributed among its *creditors* in an orderly fashion in exchange for the debtor's discharge from any obligation to pay that portion of its debts which remain unsatisfied after the distribution. ARNOLD B. COHEN, BANKRUPTCY, SECURED TRANSACTIONS AND OTHER DEBTOR–CREDITOR MATTERS ¶ 13–301 (1981); 11 U.S.C. § 726. Accordingly, once the debtor's debts are satisfied any remaining funds belong to the debtor. 11 U.S.C. § 726(a)(6). An heir does not have a "claim" against the decedent's property as that term is defined in the Bankruptcy Code, *i.e.,* a *"right to payment."* 11 U.S.C. § 101(5)(A) (emphasis added). On the contrary, heirs merely succeed to the Debtor/Decedent's probate estate. Certainly, the Kennedys have no right to share in the property of the Debtor/Decedent's estate on a *pro rata* basis with his unsecured creditors. It is hornbook law that "[l]egatees succeed to the estate of the testator as beneficiaries and objects of his bounty, *and have no rights or equities as against creditors....*" 97 C.J.S., *Wills* § 1311 (1957) (emphasis added). Accordingly, the Kennedys' objection to the dismissal of the Chapter 7 case was not entitled to much weight, if any. To hold otherwise would mean that a decedent's heir could use bankruptcy proceedings to obtain the "fresh start" that was intended for the benefit of the debtor. Once the Debtor/Decedent's creditors receive their shares of his estate, the Kennedys will be entitled to any remaining funds. But the Kennedys, as legatees under the Debtor/Decedent's will, should not be given the "fresh start" clearly intended for the Debtor.

As case similar to the one at bar is *In re Cleland,* 150 B.R. 63 (Bankr.D.Kan.1992). In *Cleland* the Chapter 7 Trustee moved to dismiss the case after the debtor died, leaving no dependents and only one creditor. The *Cleland* court considered that bankruptcy has the twofold purpose of converting the debtor's estate into cash to distribute among the creditors and giving the debtor a "fresh start." *Kokoszka v. Belford,* 417 U.S. 642, 645–646, 94 S.Ct. 2431, 2434, 41 L.Ed.2d 374 (1974); *In re Campbell,* 124 B.R. 462, 464 (Bankr.W.D.Pa.1991); *In re Krohn,* 886 F.2d 123, 127–128 (6th Cir.1989). Using those criteria, the *Cleland* court found that the facts of the case supported dismissal under § 707 since "the objectives of bankruptcy law would not be met by continuing th[e] case and the interest of the sole creditor [c]ould be best served by the dismissal." *Cleland,* 150 B.R. at 65. As in this matter, the debtor/decedent's assets were sufficient to satisfy the creditor's claim and the assets were being administered in probate court where the creditor had filed a claim. The court determined that allowing the bankruptcy case to proceed provided no benefit to the debtor and hampered the creditor's collection efforts in state court. Granting the debtor a discharge could have prevented the creditor from collecting its claim against the real property being administered in the state probate case.

 In the case at bar the Debtor/Decedent has died, leaving no dependents. The administrator of the probate estate, Malos, testified that the estate's assets are sufficient to pay the creditors. (Dkt. Entry 10 at 14.) Malos further testified that he believed it would be beneficial to dismiss the bankruptcy case. (Dkt. Entry 10 at 27, 32, 57–61.)[9]

The Bankruptcy Court properly took into account Malos' testimony. The Bankruptcy Court also correctly observed that, essentially, the major issues involved in the bankrupt-

---

torney Francis Troyan appeared on behalf of First Star at the February 1, 1994 bankruptcy hearing. (Dkt. Entry 1, record 12, Bankruptcy Court docket sheet.)

9. Malos also testified that the bankruptcy case impeded the administration of the probate estate. With regard to the equitable distribution issue, Malos testified that the Master felt she could not

proceed while the case was pending in bankruptcy. Malos also testified that the bankruptcy action caused a duplication of costs in the administration of the estate which were unnecessary and could be avoided if the estate were administered solely in the Northampton County Orphan's Court. (Dkt. Entry 10 at 59–60.)

cy proceeding concerned not bankruptcy law matters, but probate issues. (Docket Entry 10 at 205.) The Bankruptcy Court also properly acknowledged that the pending probate proceedings could administer the property of the Debtor/Decedent. Great weight was accorded to the Chapter 7 Trustee's joinder in the Motion to Dismiss. In this regard, although there was extensive criticism of the Chapter 7 Trustee, the Bankruptcy Court observed that it was significant that nobody had sought removal of the Trustee. (*Id.* at 205–06.) Furthermore, the Bankruptcy Court recognized that the "fresh start to the Debtor" concept was meaningless in this case. Finally, the Bankruptcy Court accorded great deference to the person charged by the probate court with the sole and exclusive authority over the assets of the Debtor/Decedent. All of these factors militated in favor of dismissal of the Chapter 7 case.

■ On appeal the Kennedys raise several arguments in favor of continuing the bankruptcy proceeding.[10] The Kennedys argue that dismissal of the bankruptcy cause "would cause serious harm to legitimate creditors of this Estate and would only serve to benefit those individuals who have converted assets of this Estate to the detriment of legitimate creditors, including [the] Appellants." (Dkt. Entry 4 at 3.)

The primary creditor of the Debtor/Decedent, Francesca Marra, filed the Motion to Dismiss. First Star, also a creditor, joined in that motion below. It therefore seems clear that the "legitimate creditors" do not feel that they will be harmed by the dismissal.

The Kennedys also argue that dismissal of the bankruptcy proceeding will remove the automatic stay and subject the estate to litigation and tax sales throughout the Commonwealth of Pennsylvania. The Kennedys contend that the estate will be forced to expend assets adjudicating tax litigation throughout the state.

Malos countered this argument by explaining that resolving the equitable distribution issue would eliminate the need for much of the litigation throughout the state because the estate would not be involved in litigation relating to the properties which would be awarded to Francesca Marra. Malos recognized that some assets would have to be sold to pay tax claims or fund the litigation of claims, but he preferred that the case be dismissed from bankruptcy.

The Kennedys also complained that the Debtor/Decedent's assets are being wasted and diverted. During the February 1, 1994 hearing, Marra, Jr. testified that beginning in July of 1993 and continuing to at least February, 1994, he was collecting rents, entering into contracts to have properties timbered, and entering into leases and Agreements of Sale for properties which are part of the bankruptcy estate. Marra Jr. admitted that he has commingled the monies received as a result of these activities with his personal funds and has used those funds to pay his own lawyers. (Dkt. Entry 10 at 84–87, 96–114, 127–130, 133–136.) Arguably, Marra, Jr. is taking money that belongs to the Debtor/Decedent's estate. In his testimony Marra Jr. indicated that he took this action only after concluding that the Chapter 7 Trustee was not safeguarding the estate's assets. Marra Jr. testified that "I merely attempted to protect—and promote the—assets of the real estate." (Dkt. Entry 10 at 109.) Marra Jr. also indicated that he had records of the money he had been collecting and planned to turn them over to Malos. (Dkt. Entry 10 at 87.)

Any claim of waste of estate assets can be pursued in state court against the responsible parties. As the Bankruptcy Court recognized, while the Kennedy's complain of waste of assets, no action was taken against the Trustee for not fulfilling his fiduciary duties. Under these circumstances, where essentially the person in the shoes of the Debtor/Decedent, Malos, and the creditors concur in the

10. The Kennedys raised many of these same arguments in the proceeding below and the Bankruptcy Court noted that there were compelling reasons to continue the bankruptcy proceeding. (Dkt. Entry 10 at 207.) Nevertheless, in making its decision to dismiss the bankruptcy case the

Bankruptcy Court considered all of the circumstances and factors surrounding this case and correctly afforded great weight to the fact that the Chapter 7 Trustee, the co-administrator of the probate estate and the Debtor's creditors all were in favor of dismissing the bankruptcy case.

dismissal of the Chapter 7 case, it cannot be said that the Bankruptcy Court abused its discretion in granting the requested relief.

### B. *Attorney Bresset's Appeal of the Bankruptcy Court's Decision (CV– 94–304)*

■ At the February 1, 1994 bankruptcy hearing on the Motion to Dismiss it became clear that Bresset had not been retained by Malos. Instead, he had at one time been retained, in some capacity, by the Trustee, but the positions of the Trustee and Bresset were in opposition on the Motion to Dismiss. It was also apparent that Viola Kennedy had requested that Bresset oppose the motion on behalf of the probate estate.

Bresset has filed an appeal from the Bankruptcy Court's dismissal of the Chapter 7 case, purportedly on behalf of the Debtor/Decedent's estate. (Dkt. Entry 5.) Malos filed a "Motion to Vacate and Dismiss Appeal Taken Without Authority of Appellant" (Dkt. Entry 6), in which Malos argues that he is the "duly authorized and acting Administrator with sole and exclusive control of the assets o[f] the Estate of Lawrence Marra, Sr." (Dkt. Entry 6 at ¶ 1.) This fact is undisputed. Malos asserts that he has continually advised Bresset that Bresset is not authorized to represent the estate. (Dkt. Entry 6 at ¶ 2.) Malos therefore argues that Bresset's appeal is unauthorized, illegal and invalid and asks this Court to vacate and dismiss Bresset's appeal.

Bresset is not a party to this action nor does he represent a party to this action. He contends that he has been authorized to represent the probate estate of the Debtor/Decedent, but the person with sole and exclusive control of the probate estate's assets has made it clear that Bresset is not so authorized. Accordingly, the Motion to Vacate Bresset's appeal will be granted.[11]

### CONCLUSION

Although there may have been certain advantages to maintaining the Chapter 7 case, there were countervailing disadvantages articulated by Malos, the person charged with sole and exclusive control of the assets that are at issue. The Kennedys are not creditors of the bankruptcy estate. Those who are creditors, as well as the Chapter 7 Trustee and the person charged with sole and exclusive control of the property in issue, all supported dismissal of the Chapter 7 case. Contrary to the Kennedys' assertion, the Bankruptcy Court did not base its decision solely on the preference expressed by Malos. He also gave great weight to the view of the Chapter 7 Trustee as well as the interests of the creditors. The Bankruptcy Court's consideration of these issues was not irrational, arbitrary or capricious, and his conclusion reflects a sound exercise of discretion.

An appropriate Order is attached.

### *ORDER*

**AND NOW THIS 30th DAY OF MARCH, 1995,** in accordance with the attached Memorandum, **IT IS HEREBY ORDERED THAT:**

1) The Appellants Robin and Viola Kennedy's Appeal of the decision of the Bankruptcy Court below, docketed to 3:CV–94–0303 is **DENIED.**

2) Attorney Malos' "Motion to Vacate and Dismiss Appeal Taken Without Authority of Appellant" (Dkt. Entry 6 in No. 3:CV–94–0304) is **GRANTED.**

3) The ruling of the Bankruptcy Court is affirmed.

4) The Clerk of Court is directed to mark these cases closed.

---

**11.** Since Bresset did not represent the estate or any other party, the Bankruptcy Court was correct in limiting Bresset's participation in that proceeding. Bresset, however, was not precluded from all participation at the hearing on the motion to dismiss. He apparently sat at counsel table and conferred with the Kennedys' counsel and did address the Bankruptcy Court on some matters. (*See, e.g.,* Dkt. Entry 10 at 198.) Clearly, the Kennedys' interests were not prejudiced by the limited participation accorded Attorney Bresset.