**In re Eric DOMINGUEZ, Debtor.**

**Bankruptcy No. 93–01711–5–ATS.**

United States Bankruptcy Court, E.D. North Carolina.

April 22, 1994.

Marjorie K. Lynch, Bankruptcy Administrator, Wilson, NC.

John T. Orcutt, Raleigh, NC, for debtor.

## ORDER DISMISSING CHAPTER 7 CASE

A. THOMAS SMALL, Chief Judge.

The matter before the court is the Bankruptcy Administrator's motion to dismiss the chapter 7 case for substantial abuse pursuant to 11 U.S.C. § 707(b). A hearing was held on April 6, 1994, in Raleigh, North Carolina.

Eric Dominguez filed his voluntary petition for chapter 7 relief on November 16, 1993. At the time of the petition the debtor lived in Durham, North Carolina, and the correct venue for this case is the Middle District of North Carolina. No party in interest has objected.

The debtor obtained a medical degree from Harvard Medical School in 1992, and it is his substantial future earning capacity that is the primary reason that the bankruptcy administrator believes the case should be dismissed.

When he sought chapter 7 relief, Dr. Dominguez was employed as a resident at Duke Medical Center at an annual salary of $30,000. He has recently moved to Boston where he is an anesthesiologist resident earning $33,000 a year. The debtor does not dispute that his earning potential after his internship is completed in 1997 is very promising. But, he contends that his present income of $33,000 and his income for the next three years is barely enough for him to meet his living expenses.

The debtor's schedules reflect a monthly take home pay of approximately $2,000 and total monthly expenses of approximately the same amount. Monthly expenses include $510 for apartment rent, $200 for electricity, $75 for telephone service, $200 for food, $100 for clothing, $60 for laundry, $125 for dental and medical expenses, $150 for transportation, $75 for recreation, $55 for renter's insurance, $140 for an automobile payment, and $150 for a nondischargeable student loan.

Since moving to Boston, the debtor's income has improved slightly, but his expenses, primarily his apartment rent, have increased. The debtor has paid off his automobile loan and no longer has to make a monthly car payment of $140. He maintains, however, that his 1985 Volvo automobile is unreliable and will soon need replacing. Another change of circumstances will occur this summer when the nondischargeable student loan payment will increase from $150 per month to $250 per month.

Dr. Dominguez also claims that he has a strong moral obligation and desire to send funds to support his mother and his 21 and 24 year old brothers in Puerto Rico. The debtor, however, has no legal dependents.

According to Dr. Dominguez, he comes from a poor family in Puerto Rico but managed to finance his undergraduate education at the University of Miami and his medical degree at Harvard through a combination of scholarships, jobs, student loans, and credit card advances and purchases.

The debtor's schedules reflect two nondischargeable student loans totalling $19,500. The debtor's remaining unsecured debt of $10,223.31 is owed to seven credit card companies. There is no secured debt with the exception of the automobile loan that is now paid.

The debtor's assets are minimal. He owns the 1985 Volvo that he values at $3,725 and clothing and miscellaneous furniture worth $1,100.

11 U.S.C. § 707(b) provides that:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

■ There is no dispute that Dr. Dominguez' debts are primarily consumer debts. The issue is whether the bankruptcy case is a "substantial abuse" of chapter 7. Any substantial abuse analysis must begin with the presumption that the debtor is entitled to the relief requested. A chapter 7 case should only be dismissed under § 707(b) if the facts clearly establish an "abuse of the bankruptcy process by a debtor seeking to take an unfair advantage of his creditors." *In re Green,* 934 F.2d 568, 572 (4th Cir.1991).

■ Many courts have held that the primary factor in determining substantial abuse is the debtor's future income and the debtor's ability to pay debts. *In re Krohn,* 886 F.2d 123 (6th Cir.1989) and *In re Walton,* 866 F.2d 981 (8th Cir.1989). In the Fourth Circuit, ability to pay is a significant factor, but a debtor's "income in excess of his necessary expenses is not, by itself, sufficient to support a finding of substantial abuse." *Green* at 569. In ascertaining whether a chapter 7 case constitutes substantial abuse, the court must apply the "totality of the circumstances test." *Green* at 573.

The first, and most important, factor considered by the court in this case is the debtor's ability to pay his debts. As a Harvard Medical School graduate with good grades, the debtor has an excellent prospect of making a substantial income. Dr. Dominguez is certainly capable of easily satisfying his debt of $29,723.31. The problem, of course, is that the debtor will only earn approximately $33,000 per year for the next three years.

The debtor would have us believe that he can barely survive on $33,000 a year, but the court does not consider an annual salary of $33,000 to be inadequate for a single man living in Boston. It is true that Dr. Dominguez may not be leading the luxurious life of Riley during his years of residency, but $33,000 per year is sufficient to provide an adequate lifestyle and pay some portion of his debt until he can earn the high salary that top Harvard Medical School graduates command.

Another factor of considerable importance is that the bankruptcy was not filed as a result of "sudden illness, calamity, disability, or unemployment." *Green* at 572. Dr. Dominguez is in good health, and although he has had some car repairs totalling $800 over four months, there have been no catastrophic changes in his life. In *Green* the debtor had a leg injury, and his income declined from $46,000 per year to $26,000. In the present case Dr. Dominguez' income is precisely what he anticipated it would be when he incurred his debts.

As a medical student Dr. Dominguez knew that he had to complete four years of medical school and a five year residency. He knew that his income during the residency would be approximately $33,000. The debtor's in-

come and expenses were entirely predictable, and the debtor knew while he was in medical school that he would have to make sacrifices to pay his debts during his residency. He nevertheless chose to incur those debts. Presumably the credit card companies knew at the time Dr. Dominguez opened the accounts that he, as a medical student, had very little income. Undoubtedly, the lenders were relying on Dr. Dominguez' future income to repay his debts. Certainly, Dr. Dominguez knew that his creditors were relying on his future income for repayment, and in the absence of some adverse change of circumstances, it would be an abuse of the bankruptcy process to allow him to avoid those obligations through chapter 7 bankruptcy.

■ Other factors that a court should consider in the totality of circumstances analysis include whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay, whether the debtor's proposed family budget is excessive or unreasonable, whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition, and whether the petition was filed in good faith. *Green* at 572.

The court finds that the debtor has the ability to pay his debts. It will take time, and the debtor will only be able to make minimal payments for the next few years, but shortly after he completes his residency, the debtor should have no difficulty paying his obligations in full. Three years from now may seem like a long time, but it is only a short interval when measured by the length of Dr. Dominguez' anticipated medical career. In any event, it is a time of relatively short-term sacrifice that was contemplated by Dr. Dominguez when he incurred his debts.

The debtor's family budget is not excessive but could be trimmed to accommodate some minimal payments to creditors. The court finds entirely unpersuasive the debtor's contention that his excess income should be used to support his family in Puerto Rico. In the absence of evidence of substantial need, the court does not consider it appropriate for a debtor to send money to family members at the expense of the debtor's creditors.

The debtor's schedules do contain some minor inaccuracies, but the court has not considered this to be a significant factor in this case.

The final factor is whether or not the case was filed in good faith. Presumably, "good faith" in this context means subjective good faith. In the present case the court finds that in view of the debtor's ability to pay his debts and the parties' expectations when the debts were incurred, the debtor's intention to avoid paying his unsecured debts through chapter 7 constitutes a lack of good faith.

Based on the foregoing, the court finds that the debtor's case is an abuse of chapter 7 and concludes that the case should be, and is hereby, **DISMISSED.**

**SO ORDERED.**