**In re Ellis Parker JARRELL, Jr. and Bonnie Faye Jarrell, Debtors.**

**No. B–93–13217 C–7 W.**

United States Bankruptcy Court, M.D. North Carolina.

April 4, 1995.

Zachary T. Bynum, Winston–Salem, NC, for debtors.

Robin R. Palenske, Greensboro, NC, for Bankruptcy Administrator.

### ORDER GRANTING BANKRUPTCY ADMINISTRATOR'S MOTION TO DISMISS CASE PURSUANT TO SECTION 707(b)

WILLIAM L. STOCKS, Chief Judge.

This matter came before the undersigned United States Bankruptcy Judge on March 22, 1995 upon the Motion by Bankruptcy Administrator to Dismiss Case Pursuant to Section 707(b).

After hearing and considering the testimony of Ellis Parker Jarrell, Jr. and Bonnie Faye Jarrell and the presentation of Robin R. Palenske on behalf of the United States Bankruptcy Administrator for the Middle District of North Carolina, and Zachary T. Bynum, III on behalf of the debtors; and after reviewing the written evidence and the entire official court record and proceedings in this case; and upon good cause shown, the court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On October 13, 1993, the debtors, Ellis Parker Jarrell, Jr. and Bonnie Faye Jarrell (the "Debtors"), filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The petition has not been amended since it was filed.

2. The Debtors are individuals, and it is undisputed that their liabilities are primarily consumer debts, incurred for personal, family and/or household purposes.

3. The bankruptcy petition was not filed due to a calamity suffered by the Debtors or due to sudden illness, disability or unemployment of the Debtors. The Debtors have a stable source of income: the male Debtor has been employed by R.J. Reynolds Tobacco Company for sixteen years, and the female Debtor has been employed by Kobe Copper Products for six years.

4. In Schedules I and J, the Debtors report that they have at least $344.62 in disposable income (net take-home pay in the amount of $2,504.06 and expenses of $2,159.44).

5. The court finds, however, that the Debtors have incorrectly reported their income on Schedule I and that they have monthly disposable income far in excess of the $344.62 amount that appears in their petition. The female Debtor reported on Schedule I that her gross income is $1,316.00 per month, with a net income of $978.98. The female Debtor's actual average monthly net income for 1993, however, was $282.64 greater than the amount that she reported on Schedule I—$1,261.62. The male Debtor reported on Schedule I that he had gross monthly income of $2,596.44. The male Debtor's actual average monthly gross income for 1993, however, was $130.75 greater than the amount that he reported on Schedule I. In addition, the male debtor's Schedule I net income figure was arrived at by deducting from gross income a $280.00 payment for an unsecured and unscheduled debt owed to Reynolds Carolina Federal Credit Union. Inasmuch as this debt is unsecured, the Debtors have not been required to make any payment on it since the petition was filed on October 13, 1993, and it should not be deducted in determining the Debtors' net take-home pay. After adjusting for the $280.00 payment to the credit union, the male Debtor's actual net monthly income is

$1,935.83. The Debtors' actual joint net monthly income, therefore, is $3,197.45. Using the Debtors' expenses figure of $2,159.44 as reported on Schedule J, the Debtors have $1,038.01 each month in disposable income. (the U.S. Bankruptcy Administrator did not challenge the amount of the Debtors' expenses).

6. The male Debtor has $129.82 deducted from his paycheck each month for an after-tax contribution to his capital investment plan at R.J. Reynolds Tobacco Company.

7. The Debtors' bankruptcy petition and schedules state that they do not own any real estate. The Debtors do, however, own real estate; they own jointly a 2.01–acre parcel of property on which their home is situated, which has a total tax value of $49,000.00. In addition, the male Debtor owns a one-acre residential lot that is valued for tax purposes at $12,000.00.

8. The Debtors have debts that they did not disclose in their petition. Debts owed to Sears, Roebuck & Co., to the female Debtor's mother and to Reynolds Carolina Federal Credit Union were not disclosed in the petition.

9. Most of the Debtors' unsecured debts are credit card debts. (Those debts that are not credit card debts are shown as "consolidation" loans.) The Debtors admit that at least 50% of the credit card debt reflects cash advances.

10. On Schedule J of the bankruptcy petition, the Debtors state that they make payments of $50.00 for "taxes." The Debtors' counsel advised the Bankruptcy Administrator in December of 1994 that the Debtors were paying the $50.00 per month to the Internal Revenue Service for federal income taxes. The court finds, however, that no payments to the IRS were made by the Debtors between October 13, 1993 and at least January 20, 1995. Since January 20, 1995, the Debtors have made one $50.00 payment to the IRS.

11. The debtors report on Schedule F that they have $21,391.64 in general unsecured debts. Appearing on Schedule F of the petition are three debts owed to First Union National Bank ("First Union") in the total amount of $6,000.00: a Mastercard account in the amount of $1,500.00; another Mastercard account in the amount of $1,500.00; and a Visa account in the amount of $3,000.00. Schedule D reflects a debt owed to First Union National Bank, which is secured by a judgment lien. The Debtors have stipulated that all of the unsecured First Union debt listed on Schedule F is actually included in the First Union judgment that appears on Schedule D. Thus, the Debtors' unsecured debts are actually $6,000.00 less than the $21,391.64 scheduled amount that appears on Schedule F. Accordingly, when calculating the return that could be received by creditors if the Debtors were to apply their actual disposable income to the payment of their debts, the figure of $15,391.64 should be used as the correct amount of the Debtors' unsecured debts.

12. The Debtors have significant disposable income, after proper adjustment of the reported income and deductions, to pay all, or at least a substantial portion, of their debts. If the Debtors' $1,038.01 in monthly disposable income were applied in a monthly payment of their unsecured debts, it appears that the Debtors could pay a 100% dividend on those debts in fifteen months. As noted above, the debtors have *scheduled* disposable income of $344.62. Although the court finds that Debtors' actual monthly disposable income is far greater than $344.62, payment of even this amount over a thirty-six-month period would yield a dividend to unsecured creditors in the total amount of $12,406.32, or 80% of adjusted unsecured debts.

13. Any Conclusion of Law that appears below that should more appropriately be denominated as a Finding of Fact is incorporated herein by reference.

### CONCLUSIONS OF LAW

### A. LAW APPLICABLE TO SECTION 707(b)

■ Prior to 1984, the Bankruptcy Code permitted debtors a right to a Chapter 7 "fresh start" that was essentially unlimited except for the objections to discharge under Sections 523(a) and 727(a), and dismissals for bad faith under Section 707(a). In 1984, however, Congress amended the 1978 Bank-

ruptcy Code and introduced an additional limit on a debtor's right to a Chapter 7 discharge.[1] Section 707(b) now permits a court to dismiss a debtor's case if granting relief under Chapter 7 would be a substantial abuse of the Chapter 7 process. Section 707(b) states:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b).

■ Unfortunately, the term "substantial abuse" is not defined by the Bankruptcy Code. The legislative history of Section 707(b), however, reveals that the purpose of the amendment was to prevent the use of Chapter 7 by unneedy debtors. *In re Richmond*, 144 B.R. 539, 541 (Bankr.W.D.Okl. 1992), citing *In re Walton*, 866 F.2d. 981, 983 (8th Cir.1989); *see also* S.Rep. 98–65, 98th Cong. 1st Sess., 53–54 (1983) (reporting on an earlier draft of the 1984 amendment). The legislative history states that "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." S.Rep. 98–65 at 54. Chapter 7 is intended to give "the truly needy a fresh start, not to give those who can afford to meet their obligations a head start." *In re Grant*, 51 B.R. 385, 394 (Bankr. N.D.Ohio 1985).

The question of what constitutes "substantial abuse" is one that has been considered by a number of courts. The Ninth Circuit, in the case of *In re Kelly*, 841 F.2d 908, 914 (9th Cir.1988), adopted a *per se* rule to the effect that income in excess of reasonable expenses is sufficient, *standing alone*, to constitute substantial abuse. The *Kelly* approach has been followed by many other courts. *See,*

*e.g., United States Trustee v. Harris*, 960 F.2d 74 (8th Cir.1992); *In re Stratton*, 136 B.R. 804 (Bankr.C.D.Ill.1991); *In re Edwards*, 50 B.R. 933 (Bankr.S.D.N.Y.1985).

In considering the issue of what constitutes "substantial abuse," the Fourth Circuit in the case of *In re Green*, 934 F.2d 568 (4th Cir.1991) rejected the *per se* rule followed by *Kelly* and its progeny, however, and instead adopted a "totality of the circumstances" test for determining whether there has been a substantial abuse of the Chapter 7 process.

■ The totality of the circumstances approach recognizes that, while the debtor's future income and ability to repay debts for which a discharge is sought is the *primary* and most important factor to be considered, the totality of the circumstances approach requires that there also be an evaluation of other factors such as the following:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor's schedules and statement of current income and expenses reasonable and accurately reflect the true financial condition;

(3) Whether the debtor incurred cash advances and made consumer purchases far in excess of ability to repay;

(4) Whether the debtor's proposed family budget is excessive or unreasonable; and

(5) Whether the petition was filed in good faith.

*Green*, 934 F.2d at 572.

■ Generally, dismissal for substantial abuse can be based upon lack of honesty or lack of need. *In re Sanseverino*, 171 B.R. 46, 48 (Bankr.N.D.Ohio 1994). There is no requirement that the movant show that there has been fraud or bad faith on the part of the debtor for a case to be dismissed for substantial abuse. *Green*, 934 F.2d at 568.

■ While there is a presumption in favor of granting the relief requested by the debtors, it is improper to grant such relief if

---

1. Section 707(b) was also amended in 1986 to authorize the filing of dismissal motions by the United States Trustee. (Pursuant to Rule 9035 of the Federal Rules of Bankruptcy Procedure, § 707(b) is applicable to the U.S. Bankruptcy Administrators in North Carolina and Alabama).

doing so would be a substantial abuse of the Chapter 7 process under the totality of the circumstances. 11 U.S.C. § 707(b); *Green,* 934 F.2d 568.

## B. APPLICATION OF THE LAW TO THE FACTS IN THIS CASE

An analysis of the factors required by *Green* to be considered in the context of the totality of the Debtors' circumstances indicates that the use of Chapter 7 by these Debtors would be a substantial abuse of the Chapter 7 process.

### 1. The Debtors Have Sufficient Disposable Income to Pay a Substantial Dividend to Creditors.

▪ The ability to repay the debts for which a discharge is sought is the primary factor to be considered in determining whether substantial abuse exists. *Green,* 934 F.2d at 572. Furthermore, the greater the amount of a debtor's disposable income, the more important the disposable income factor is in considering whether substantial abuse exists for purposes of § 707(b).

In this case, the Debtors' financial ability to pay their debts was demonstrated by the Debtors' testimony and the documentary evidence. The Debtors have a stable source of income and could pay their debts out of their future earnings. Thus, the Debtors' filing of a Chapter 7 petition in this case appears to be an attempt to avoid paying creditors when the Debtors have the means to pay their creditors. *See In re Dominguez,* 166 B.R. 66 (Bankr.E.D.N.C.1994) (case dismissed for substantial abuse where debtor could satisfy his debts).

### 2. The Debtors' Bankruptcy Petition was Not Filed Because of a Calamity or Because of Sudden Illness, Disability, or Unemployment.

These Debtors were not forced into bankruptcy by any unforeseen or catastrophic event; the Debtors admit that the bankruptcy petition was not filed due to a calamity suffered by the Debtors or due to sudden illness, disability or unemployment.

This case, therefore, is distinguishable from the *Green* case on this issue of the motivation for filing the bankruptcy petition. In the *Green* case, the debtor had suffered a leg injury that caused him to be out of work for six months and to fall behind in his debt payments when his income was reduced from $46,000 per year to $26,000. *Green,* 934 F.2d at 569. In contrast, the Debtors in this case admit that they have not suffered from any unforeseen events beyond their control that forced them to file for bankruptcy protection.

In fact, the Debtors' income appears to be even greater than they anticipated it would be when they chose to incur their debts. *See In re Dominguez,* 166 B.R. 66, 67 (Bankr. E.D.N.C.1994) (case dismissed for substantial abuse; the lenders were relying on the debtor to use his future income to repay his debts, the debtor knew this and, in the absence of some adverse change of circumstances, allowing him to avoid those obligations through a Chapter 7 bankruptcy would be an abuse of the bankruptcy process).

### 3. The Debtors' Petition, Schedules and Statement of Current Income and Expenses Do Not Reasonably and Accurately Reflect the Debtors' True Financial Condition.

The evidence in this case indicates that the information provided by the Debtors in their petition did not reasonably or accurately reflect their true financial condition:

a. The Debtors under-reported their income on Schedule I.

b. The Debtors have listed on Schedule J monthly payments to the IRS in the amount of $50.00 that they did not make for at least the first seventeen months after the petition was filed.

c. The Debtors own real estate that was not disclosed in the petition. Courts have held that an omission of assets as a result of a debtor's reckless disregard for the truth amounts to fraud under Section 727(A)(4)(A) of the Bankruptcy Code. *In re Henderson,* 134 B.R. 147, 159–60 (Bankr.E.D.Pa.1991).

d. The Debtors have debts that they did not disclose in their petition. Courts have

held that a debtor's failure to list debts on the bankruptcy petition is an indication of lack of good faith and candor. *See In re McCormack,* 159 B.R. 491, 494 (Bankr. N.D.Ohio 1993) (the debtors' omission of a debt owed to the male debtor's employer was the most important factor in the court's determination that the debtors had not shown good faith and candor).

Although some of these inaccuracies might not, standing alone individually, lead to the conclusion that the petition does not reasonably and accurately reflect the Debtors' true financial condition, the court finds that the cumulative effect of the inaccuracies is that the petition did not reasonably and accurately reflect the Debtors' true financial condition. The court also notes that each inaccuracy inured to the benefit of the Debtors by either reducing their reported income or increasing expenses so as to reduce the amount of disposable income reflected in the petition.

#### 4. The Debtors Incurred Cash Advances and Made Consumer Purchases in Excess of Their Ability to Repay.

The Debtors' general unsecured debts that appear on Schedule F are, for the most part, credit card debts. (Those debts that are not credit card debts are listed as "consolidation" loans, presumably the result of loans to consolidate credit card debts.) The Debtors admit that at least 50% of the credit card debt reflects cash advances. Any need that the Debtors may have had to file bankruptcy appears to be the result of their simply having chosen to purchase more consumer goods and receive more cash advances than they are willing to now pay for. The magnitude of the Debtors' credit card and cash advance debt supports the conclusion that they knew or should have known of their inability to repay the debts at the time the debts were incurred.

#### 5. The Debtors' Proposed Family Budget is Excessive or Unreasonable.

The $129.82 that the male Debtor has arranged to have deducted each month from his paycheck for an after-tax contribution to his capital investment plan at R.J. Reynolds Tobacco Company may be excessive or unreasonable in light of the Debtors' financial circumstances.

Any Finding of Fact that appears above that should more appropriately be denominated as a Conclusion of Law is incorporated herein by reference.

### C. CONCLUSION

Based on the foregoing, this court finds that the evidence in this case has demonstrated with certainty that the granting of relief to these Debtors under Chapter 7 would be an abuse of the Chapter 7 process; therefore, the case should be dismissed pursuant to § 707(b).

Upon the foregoing Findings of Fact and Conclusions of Law, it is therefore ORDERED that:

1. The Motion by Bankruptcy Administrator to Dismiss Case Pursuant to Section 707(b) be GRANTED, effective April 11, 1995;

2. The Debtors shall be allowed through and including April 11, 1995 in which to file the pleadings necessary to convert their Chapter 7 bankruptcy case to Chapter 13 pursuant to § 706 of the Bankruptcy Code, if the Debtors so choose to do so.

3. In the event that the Debtors elect not to convert their Chapter 7 bankruptcy case to Chapter 13 before 5:00 p.m. on April 11, 1995, this case shall be dismissed at that time without further notice, hearing or order.