**In re Tony Manuel RODRIGUEZ, Debtor.**

**No. 5–98–00740–7.**

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 19, 1999.

Christopher A. Bunker Stephens City, VA, for Debtor.

Roy V. Wolfe, III, Harrisonburg, VA, Chapter 7 Trustee.

James G. Cosby, Office of U.S. Trustee, Roanoke, VA.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

The matter before the court involves the United States Trustee's (hereinafter "Trustee's") motion to dismiss the debtor's Chapter 7 petition pursuant to 11 U.S.C. § 707(b). Specifically, the Trustee alleges that the debtor's post-petition conduct constitutes substantial abuse of the provisions of Chapter 7.

A hearing on the Trustee's motion was held on September 24, 1998, in Harrisonburg, Virginia, at which the court heard the evidence, observed the demeanor of the witness, and considered the argument of counsel. The court also reviewed the memorandum of authority filed by each party, the debtor's bankruptcy petition and subsequent amendment of his Schedule J, and the transcript of the September 24th hearing. For the reasons stated in this decision and order, the court holds that the debtor's petition for relief under Chapter 7 is dismissed for substantial abuse pursuant to 11 U.S.C. § 707(b).

### Facts

The debtor filed a petition for Chapter 7 relief on May 11, 1998. At the time of filing, the debtor's schedules listed total liabilities of $4,503 of which $3,896 were eligible for discharge under Chapter 7. Debtor's monthly gross income was $3,181.75 before a deduction of $286.39 for "401K." [1]

At the creditor's meeting held pursuant to 11 U.S.C. § 341 on July 8th, the Chapter 7 trustee informed the debtor that it appeared to him that the debtor could repay his debts in a relatively short period of time by redirecting his 401(k) contribution to fund a Chapter 13 plan. Transcript p. 7. Before adjourning the meeting, the Chapter 7 trustee suggested to the debtor that he consult with his attorney about dismissing or converting his case to another Chapter. Transcript p. 8. On August 10th, the debtor amended Schedule J of his petition to reflect increased expenses including increased transportation-related expenses resulting from his post-petition purchase of a new 1998 Ford pickup.[2] The expense items changed on the amended Schedule J are as follows:

| Item | Original Sched. J | Amended Sched. J |
|------|------------------:|-----------------:|
| Food | $ 300.00 | $ 402.40 |
| Transportation | 400.00 | 167.86 |
| Auto insurance | 98.00 | 116.68 |
| Auto payment (truck) | 0.00 | 433.96 |
| Family emergencies | 0.00 | 77.26 |
| Misc. | 0.00 | 367.37 |
| Total expenses including unchanged items not shown here | $ 1,170.50 | $ 1,947.20 |

1. It is presumed from the evidence presented that this payroll deduction is a contribution made to a retirement plan defined under § 401(k) of the Internal Revenue Code.

2. "Transportation-related expenses" include the line item expenditures for "transportation", "auto insurance", and "auto payment (truck)" on debtor's schedule J both as originally filed and as amended.

At the adjourned § 341 meeting on August 12th the debtor informed the Chapter 7 trustee that he was still making the monthly contributions to his 401(k) plan.

*Law and Discussion*

11 U.S.C. § 707(b) provides as follows:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

■ Section 707(b) was enacted to reduce the number and amount of consumer debts annually discharged by debtors who have the ability to repay a significant portion of their debts. It is intended to allow a "fresh start" to the truly needy while denying a "head start" to the abusers. *In re Grant*, 51 B.R. 385, 392 (Bankr.N.D.Ohio 1985).

Although the debtor does not deny that his debts are "primarily consumer debts", this Court nonetheless finds that all of his debts are clearly "consumer debts" as that term is defined in 11 U.S.C. § 101(8).[3] Thus, the only factor remaining to be considered under § 707(b) is whether the granting of relief would constitute "substantial abuse" of the provisions of Chapter 7.

■ The term "substantial abuse" is undefined in the Bankruptcy Code. It is instead left open for judicial interpretation, the key to the analysis being whether the debtor could realistically fund a Chapter 13 plan which would pay his creditors a significant

portion of their claims. *Grant* at 394. While there is a presumption in favor of granting the relief requested by the debtor, the Fourth Circuit Court of Appeals held that it would be improper to grant such relief if doing so would constitute an abuse of the provisions of 11 U.S.C. Chapter 7 considering the totality of the circumstances. *In re Green*, 934 F.2d 568 (4th Cir.1991).

■ While the *Green* Court refused to accept the debtor's ability to repay his debts as substantial abuse per se, it did hold that a debtor's ability to repay his debts is the principal factor to be considered in the "totality of the circumstances". *Green* at 572. In addition to the debtor's ability to repay his debts, the "totality of the circumstances" approach adopted by the Fourth Circuit requires an evaluation of factors such as the following:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances or made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*Id.* at 572. In addition to the above factors, the Court in *Green* also recommended consideration of the following cases: *In re Grant*, 51 B.R. 385, 396 (Bankr.N.D.Ohio 1985) (citing debtor's "freewheeling spending"); *In re Peluso*, 72 B.R. 732, 738 (Bankr. N.D.N.Y.1987) (debtor altered his monthly

---

**3.** 11 U.S.C. § 101(8) defines "consumer debt" to mean "debt incurred by an individual primarily for a personal, family, or household purpose."

obligations at least three times in statements to the court; filing of petition was not precipitated by any injury, illness, or loss of employment); *In re Shands*, 63 B.R. 121, 123 (Bankr.E.D.Mich.1985) (debtor's choice of Chapter 7 over Chapter 13 was not motivated by inability to afford repayment but by some personal motive; an ability to pay creditors 100% within three years coupled with some egregious circumstance constitutes substantial abuse). *Id.* at 573.

█ Considering the debtor's ability to repay his debts, the Court finds that the debtor's voluntary monthly contribution of $286.39 to his 401(k) and his post-petition acquisition of a new vehicle clearly indicate that he had the ability to fully fund a Chapter 13 plan without incurring undue hardship. The debtor's post-petition purchase of the new truck resulted in a net increase in monthly transportation-related expenses of $220.50.[4] This voluntary increase indicates that the debtor feels that he has the ability to pay at least that amount to his creditors. *See In re Shands*, 63 B.R. 121, 123 (Bankr. E.D.Mich.1985).

The debtor's monthly contribution of $286.39 to his 401(k) plan should also be considered a voluntary payment which the debtor could instead pay to his creditors. *See In re Norris*, 225 B.R. 329, 333 (Bankr. E.D.Va.1998) *citing In re Jarrell*, 189 B.R. 374, 379 (Bankr.M.D.N.C.1995) (the debtor's monthly contribution to a capital investment plan was unreasonable given debtor's financial circumstances).

The increase in transportation-related expenses and the contribution to the 401(k) alone total over $500 per month that the debtor could have used to pay his creditors. In doing so, the debtor could have paid his creditors 100% in less than ten months.[5] Conversely, if the debtor remains in Chapter 7, the majority of his creditors will receive nothing.

Turning next to the first factor of the "totality of the circumstances" approach, this Court finds no evidence that the debtor's petition was filed due to sudden illness, calamity, disability or unemployment. In fact, the debtor's Schedule I indicates that he has enjoyed steady employment with the same employer for 8 years and expects to earn approximately $38,000 in 1998. Additionally, nothing in the other schedules filed with the debtor's petition indicates a sudden illness or calamity which might have necessitated filing for Chapter 7 protection. Thus, consideration of this factor weighs in favor of dismissal.

The second factor, whether the debtor incurred cash advances or made consumer purchases far in excess of his ability to repay, raises again the issue of the debtor's post-petition purchase of a new truck. The purchase of the new truck directly increased the debtor's monthly transportation-related expenses by $220.50.[6] According to the Chapter 7 trustee's testimony, the debt incurred by this purchase amounted to more than three times the debtor's pre-petition debt and increased his liabilities by approximately $19,000. Transcript p. 9. Considering that the debtor made this purchase at the same time he was seeking protection from other creditors behind the shield of Chapter 7, the Court concludes that the purchase clearly represents a consumer purchase made far in

---

4. Although debtor's monthly *transportation* expense decreased by $232.14, his monthly *auto insurance* expense increased $18.68 and the new truck added a monthly *automobile payment* of

$433.96 resulting in a net increase in transportation-related expenses of $220.50 ($18.68 + 433.96—232.14 = $220.50).

5.

| | |
|---|---|
| Debtor's total liabilities on May 11, 1998: | $4,502.76 |
| Chapter 13 trustee's 10% on receipts: | 450.28 |
| Total payments into plan to yield 100% | $4,953.04 |

$4,953.04 / $500 per month = < 10 months

6. See Note 4, Supra.

excess of the debtor's ability to repay. As such, the Court's consideration of this factor weighs in favor of dismissal.

This Court does not intend to scrutinize the debtor's scheduled expenses for excess nor impose a standard of living upon the debtor and his dependants in considering whether the debtor's proposed family budget is excessive or unreasonable. However, because the need to amend his schedules arose primarily if not solely, from the post-petition activities of the debtor, (e.g. the acquisition of the new truck) the level of scrutiny the Court applies to all of the circumstances of the debtor's case rises substantially. As a result, the Court questions the appearance of $77.26 per month for "Family emergencies" and $367.37 per month for "Miscellaneous" on the debtor's amended Schedule J without further explanation for either expense. In addition, the debtor's monthly contribution to his 401(k) may be unreasonable considering the debtor's financial condition. See *In re Norris*, 225 B.R. 329, 333 (Bankr.E.D.Va. 1998); *In re Jarrell*, 189 B.R. 374, 379 (Bankr.M.D.N.C.1995). The circumstances surrounding the appearance of the new expenses along with the debtor's monthly contribution to his 401(k) plan made to the detriment of his creditors, causes this factor to also weigh in favor of dismissal.

The fourth factor, whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect his true financial condition, once again compels the Court to consider the increased expenses in the debtor's amended Schedule J. In so doing, the Court finds that the ability of the debtor to find room in his budget for additional transportation-related expenses of $220.50, the $286.39 contribution to his 401(k), and the additional expenses of $77.26 for "Family emergencies" and $367.37 for "Miscellaneous" all combine to raise serious questions concerning the accuracy of the debtor's schedules. It appears that the debtor is able to make room in his budget for expenditures that he desires to make while insisting that he is unable to pay his creditors. The debtor's Schedule I and amended Schedule J disclose a monthly deficit of $745.84. If the monthly deficit is indeed an accurate reflection of the debtor's financial condition, it will take just over six months for the debtor to return to his pre-petition level of indebtedness.[7] If the Court were to accept such a large monthly deficit as an accurate representation of the debtor's financial condition, the debtor's post-petition purchase of a new truck would be even more incredulous. Instead, the Court refuses to accept the debtor's schedules as an accurate reflection of his financial condition and as a result, weighs this factor in favor of dismissal.

Consideration of the final factor, whether the petition was filed in good faith, again raises the issue of the post-petition acquisition of a new truck. See *Grant*, at 395 (good faith of the debtor questioned in post-petition surrender of one leased vehicle in exchange for two leased vehicles although monthly transportation-related expenses remained unchanged). The Court finds that the debtor's post-petition truck purchase made with the knowledge that a short-term 100% Chapter 13 plan was feasible constitutes the kind of egregious abuse that § 707(b) is intended to prevent. See *In re Shands*, 63 B.R. 121, 123 (Bankr.E.D.Mich.1985) (an ability to pay creditors 100% within three years coupled with some egregious circumstance constitutes substantial abuse).

*Conclusion*

For the reasons stated in this decision and order it is apparent to this Court that the

7.

| Monthly deficit reflected on debtor's amended Schedule J | $ 745.84 |
|---|---|
| | × 6 |
| Calculated level of indebtedness after six months | $4,475.04 |
| Indebtedness shown on debtor's Schedules D, E, and F before the truck purchase | $4,502.76 |

debtor could have easily funded a short-term Chapter 13 plan paying his creditors 100% of their claims. Applying the "totality of the circumstances" approach adopted by the Fourth Circuit, this Court finds that the debtor's conduct constitutes substantial abuse of 11 U.S.C. Chapter 7. Accordingly, it is

### ORDERED

That the debtor's Chapter 7 petition be **DISMISSED.**