**Gregory Alan SHAW and Martha Hicks Shaw, Appellants,**

v.

**UNITED STATES BANKRUPTCY ADMINISTRATOR, Appellee.**

**No. 1:04 CV 102.**

United States District Court, M.D. North Carolina.

June 1, 2004.

John Arlis Meadows, Winston–Salem, NC, for Appellants.

Michael Deams West, U.S. Bankruptcy Court Middle Dist. of N.C., Robyn R. Compton Whitman, Greensboro, NC, for Appellee.

## MEMORANDUM OPINION

OSTEEN, District Judge.

■ Debtors Gregory Alan Shaw and Martha Hicks Shaw have appealed a December 16, 2003, order dismissing their Chapter 7 case pursuant to 11 U.S.C. § 707(b). On appeal, the Bankruptcy Court's conclusions of law are subject to de novo review. *In re Deutchman,* 192 F.3d 457, 459 (4th Cir.1999). Factual findings are reversible only where they are clearly erroneous. *Green v. Staples (In re Green),* 934 F.2d 568, 570 (4th Cir.1991).

■ Section 707(b) of the Bankruptcy Code permits dismissal where the court finds that "granting relief would be a substantial abuse" of the provisions of Chapter 7. The section does, however, create a presumption in favor of granting relief to the debtor. The Fourth Circuit has suggested six factors for use in identifying the presence of substantial abuse. *See Green,* 934 F.2d at 572. First, the court provided five factors to aid in weighing the "totality of the circumstances." *Id.* These factors are: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and (5) whether the petition was filed in good faith. *Id.* Second, the court identified a

sixth, "primary factor" as the debtor's ability to repay creditors through a Chapter 13 plan. *Id.*

## I. THE "TOTALITY OF THE CIRCUMSTANCES" FACTORS

### A. Whether the Bankruptcy Petition Was Filed Because of Sudden Illness, Calamity, Disability, or Unemployment

The parties disagree whether the female Debtor's job loss should weigh in favor of allowing the Debtors' bankruptcy. She was terminated on September 19, 2003, approximately four months after filing for bankruptcy on May 27, 2003. The Debtors contend that their filing was precipitated by knowledge of a future job loss. Appellants' Br. at 7 ("[T]he female debtor anticipated becoming unemployed in the near future.").[1] Despite the four-month interval separating the filing from termination, the female Debtor believed at the time that her termination would occur in July. The Bankruptcy Administrator argues that the termination was not "sudden," and that Debtors had an opportunity in the face of an anticipated job loss to lower their standard of living, a step they did not take. Furthermore, the female Debtor received a severance package that continued her salary through April 11, 2004 (approximately seven months after termination).

Although the uncertainty surrounding the female Debtor's employment, such as not knowing when the termination would occur or the extent of any severance package, may have been the last straw, there is evidence showing that other factors may have more substantially motivated their filing. Debtors experienced financial difficulty for a significant period of time, dating back to 1993 when the male Debtor

lost his position at R.J. Reynolds and was unemployed for 11 months. Appellants' Br. at 5. According to the Bankruptcy Court's opinion, Debtors had lived beyond their means for a substantial period. On multiple occasions, they made significant purchases on the expectation of receiving bonuses that never materialized. *In re Shaw*, No. 03–61615–7W, slip op. at 7 (Bankr.M.D.N.C. Dec. 5, 2003); *see also* Hr'g Tr. at 45, 78, Nov. 24, 2003. Although Debtors insist that they were able to service their debt on time until May 2003, it appears that their obligations were only met by debt consolidation and refinancing, resulting in over $130,000 in unsecured credit card debt. Despite their economic troubles, Debtors do not appear to have made significant changes in their spending, as noted below. For these reasons, this court agrees with the Bankruptcy Court that the "sudden unemployment" factor weighs against allowing debtors' bankruptcy petition.

### B. Whether the Debtor Incurred Cash Advances and Made Consumer Purchases Far in Excess of Ability to Repay

The Bankruptcy Court found that Debtors had "lived beyond their means for years." *Shaw*, slip op. at 7. The court found that mounting debt did not deter Debtors from continuing to spend money. Even as recently as two or three years ago Debtors purchased a $4,000 bedroom suite and were contributing $1,000 per month toward their daughter's college expenses. Additionally, Debtors used cash advances on credit cards for maintenance and repair of a home they could not afford, but were unwilling to leave. *See* Hr'g Tr. at 55, Nov. 24, 2003. During this same period, Debtors purchased a 2002 Oldsmobile Bra-

---

1. It does not appear that the female Debtor knew conclusively at the time of filing that her job was jeopardized by the upcoming workforce reductions.

vado and a 2001 Oldsmobile Alero. In view of their already substantial debt, these purchases and advances were made far in excess of Debtors' ability to repay. Therefore, the "ability to repay" factor weighs against allowing Debtors' petition.

### C. Whether the Debtor's Proposed Family Budget Is Excessive or Unreasonable

The Bankruptcy Court found seven expenses in Debtors' budget evidencing that it is excessive and unreasonable. The two most significant expenses are the mortgage payments and college expenses for their daughter. Debtors' mortgage payments present the most persuasive evidence of substantial abuse of the relief provided by Chapter 7. Mortgage payments of $3,349 per month are required for Debtors to retain their house appraised at $415,000. Appellants' Brief at 4. Debtors contend that the house would never sell for this much. Whatever the value may be, their insistence on making such large mortgage payments manifests a desire to hold on to a certain station of life, a desire that seems to have caused many of their problems in the first place. Courts have found budgets unreasonable or excessive where debtors have retained houses or other assets requiring high payments. *See In re Schmonsees*, No. 01–10844C–7G, 2001 WL 1699664, at *4 (Bankr.M.D.N.C. Sept.21, 2001) (holding excessive monthly mortgage payments of $2,450 on a $290,000 four-bedroom home occupied by only husband and wife); *In re Engskow*, 247 B.R. 314, 317 (Bankr.M.D.Fla.2000) (holding excessive a budget allocating half of income to mortgage payments on a $219,000 house).

Debtors also make vehicle lease payments of $349 per month[2] for a car driven by their daughter, and were paying over $1,000 per month toward her college expenses.[3] *Shaw*, slip op. at 7. The Debtors' 24–year–old son currently lives at home, but is not paying rent. *Id.* at 6. Additional unnecessary expenses cited by the Bankruptcy Court include payments for two phone lines, two cell phones, and swimming pool maintenance. *Shaw*, slip op. at 6.

Although the expenses related to their daughter's college education have ended, Debtors' excessive mortgage payments alone are sufficient to justify the Bankruptcy Court's determination that the Debtors' budget is excessive and unreasonable. Therefore, this factor weighs against allowing Debtors' petition.

### D. Whether the Debtor's Schedules and Statement of Current Income and Expenses Reasonably and Accurately Reflect the True Financial Condition

The Bankruptcy Court found, and neither party disputes, that Debtors' schedules and statements were accurate.

### E. Whether the Petition Was Filed in Good Faith

The Bankruptcy Court found that the Debtors did not file in good faith. Debtors contend that there is no lack of good faith, and that they merely desire to keep the family home where their children were raised. At several points in their brief, Debtors contend that the home should be treated differently than other expenses, stating that a home "carries a special posi-

---

**2.** The lease will terminate in November 2004.

**3.** More recently, the Debtors took out a student loan for their daughter, thereby reducing their monthly payments to $520 per month.

Their daughter graduated in May 2004, so there are no continuing expenses for her education.

tion of importance" in our society, and that "the Bankruptcy Court should not withhold the protection of the Bankruptcy Code ... upon the condition that they ... surrender their home." Appellants' Br. at 10. Although their home undoubtedly has great sentimental value, such value does not singlehandedly outweigh the importance our society places on responsibly paying debts. Courts may be more lenient where a larger house is required to raise children, *see. e.g., Schmonsees,* 2001 WL 1699664, at *4, but in this case, both of Debtors' children are adults. As will be discussed below, Debtors could repay a portion of their unsecured debt were they to reduce their mortgage payment. The Bankruptcy Court found that Debtors could reasonably lower their housing costs by $1,000 per month. In light of this finding, which is not clearly erroneous, the court was not in error in finding a lack of good faith. Thus, this factor weighs against allowing Debtors' petition.

## II. THE "PRIMARY FACTOR": ABILITY TO REPAY

■ In *Green v. Staples,* the Fourth Circuit identified the debtor's ability to repay as the primary factor in determining substantial abuse. 934 F.2d 568, 572 (4th Cir.1991). In contrast with the second factor of the "totality of the circumstances" test, where "ability to repay" analyzes the debtor's historical ability to repay debts, "ability to repay" in this context analyzes the degree to which the debtor could pay

creditors a significant portion of the debt under a Chapter 13 plan. According to the Bankruptcy Court, the Chapter 13 Trustee estimated a dividend of 29% over 36 months. *Shaw,* slip op. at 5. In contrast, under Chapter 7 the unsecured creditors will receive nothing. *Id.* Although Chapter 7 cases are more often dismissed under § 707(b) where unsecured creditors would receive a higher percentage in Chapter 13, there are cases denying Chapter 7 relief where unsecured creditors would receive as little as 19% and other aggravating factors were present.[4] The Bankruptcy Court did not err as a matter of law in finding that a dividend of 29% over 36 months was a significant portion of their debt. Therefore, this finding supports a denial of Debtors' Chapter 7 petition.

## III. CONCLUSION

The Bankruptcy Court found that four out of the five "totality of the circumstances" factors weighed in favor of disallowing Debtors' petition. A review of these findings shows that the Bankruptcy Court's opinion and order were without reversible error. Additionally, the Bankruptcy Court's finding that Debtors' ability to pay 29% of their unsecured debts in Chapter 13 would constitute payment on a significant portion of their debt, although not as high a percentage as is common in cases disallowing a Chapter 7 petition, is not without precedent. The court's opin-

---

4. *See In re Norris,* 225 B.R. 329, 332–33 (Bankr.E.D.Va.1998) (substantial abuse found where debtors had ability to repay 47% of debt through a Chapter 13 plan); *In re Vianese,* 192 B.R. 61, 71 (Bankr.N.D.N.Y.1996) (substantial abuse found where debtors could only pay 19% to unsecured creditors in Chapter 13); *In re Jarrell,* 189 B.R. 374, 376 (Bankr.M.D.N.C.1995) (substantial abuse indicated where the debtors could pay 80% of their unsecured debts over a period of 36

months in Chapter 13); *In re White,* 49 B.R. 869, 874–75 (Bankr.W.D.N.C.1985) (substantial abuse not indicated where the debtor could not pay a "significant amount" of his debts in Chapter 13); *In re Bryant,* 47 B.R. 21, 23 (Bankr.W.D.N.C.1984) (substantial abuse indicated where the debtor, "with only a modicum of restraint" could pay 67% of his unsecured obligations over a 36–month period in Chapter 13).

ion also gave due weight to the statutory presumption favoring Debtors' petition. Therefore, after considering the factors laid out in *Green,* the court will affirm the Bankruptcy Court's Order of December 16, 2003, dismissing the Debtors' Chapter 7 petition.

An order in accordance with this memorandum opinion shall be filed contemporaneously herewith.

### ORDER

For the reasons set forth in the memorandum opinion entered contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that the December 16, 2003, ruling of the Bankruptcy Court is AFFIRMED.