**UNITED STATES TRUSTEE FOR THE WESTERN DISTRICT OF VIRGINIA, Appellant,**

v.

**Joseph Mark HARRELSON and Michele Boardman Harrelson, Appellees.**

No. 4:04CV00070.

United States District Court,
W.D. Virginia,
Danville Division.

Feb. 2, 2005.

James Gordon Cosby, Office of the United States Trustee, Roanoke, VA, for Appellant.

Mark T. Williams, Williams Stilwell Morrison Williams & Light, Danville, VA, for Appellees.

### MEMORANDUM OPINION

KISER, Senior District Judge.

Before me is an Appeal [2] filed by Appellant, the United States Trustee for

the Western District of Virginia ("Trustee"). The parties have waived oral argument and submitted the motion on briefs. The motion is therefore ripe for decision. For the reasons below, I hereby **REVERSE** the decision of the Bankruptcy Court and **REMAND** the case for further proceedings.

## I. PROCEDURAL HISTORY

On November 21, 2003, Joseph Mark Harrelson and Michele Boardman Harrelson ("Harrelsons" or "Debtors") filed a voluntary petition for Chapter 7 Bankruptcy. The Trustee filed a motion to dismiss the case based on substantial abuse of the bankruptcy system under 11 U.S.C. § 707(b). The Bankruptcy Court entered an Order and Memorandum denying the motion to dismiss. The Trustee then timely filed his Notice of Appeal so that the case is now before this Court on appeal from the Bankruptcy Court.

## II. STATEMENT OF FACTS

Mr. Harrelson is employed as a rural postal carrier, and Mrs. Harrelson is employed as a Danville City school teacher. The Harrelsons have two children, both of whom are currently in college, and continue to support both of them. Currently, they live in a home appraised at approximately $85,000. In March 2001, the Harrelsons entered into a consumer credit counseling program in an attempt to eliminate their debt but left the program after three years.

On November 21, 2003, the Harrelsons filed a voluntary petition for Chapter 7 Bankruptcy. They scheduled $93,554.10 in secured debt and $38,896.06 in unsecured debt. Mr. Harrelson scheduled gross

monthly income of $3,763.50 while Mrs. Harrelson scheduled gross monthly income of $3,230.00. The Harrelsons scheduled their cumulative net monthly income at $4,392.83 with monthly expenses of $4,429.20. Their monthly expenses included $130.00 for cable television, $225.00 for cell phones, $150 for automobile insurance for four cars, $145.00 car payment for their son's vehicle, $300 support for adult child, and $50 for payment of taxes for the mother of one of the Debtors.

At the final hearing, the Trustee presented evidence that the Harrelsons understated their gross monthly income. Mr. Harrelson's W–2 showed that he actually earned $4,204.24 in monthly gross income which is approximately $440.74 more than he originally scheduled. Mrs. Harrelson's W–2 showed that she earned $3,529.77 in gross monthly income which is $299.77 more than she originally scheduled. Together, they understated their monthly gross income by $740.51.[1]

## III. TRUSTEE'S APPEAL OF DECISION DENYING TRUSTEE'S MOTION TO DISMISS BASED ON SUBSTANTIAL ABUSE

### A. Standard of Review

■ A district court reviews findings of fact by a bankruptcy court under a clearly erroneous standard and reviews conclusions of law by a bankruptcy court *de novo*. *In re Tudor Assocs., Ltd. II*, 20 F.3d 115, 119 (4th Cir.1994).

### B. Discussion

■ A court may dismiss a Chapter 7 Bankruptcy case if the case is filed by a debtor with primarily consumer debts and

---

1. The Bankruptcy Court found that the Harrelsons understated their monthly gross income by $650.41 which is an error. First, the Court erroneously stated that Mrs. Harrelson understated her income by $199.77 instead of $299.77. Then, the Court compounded that error by incorrectly adding $199.77 and $40.74 to get $650.41 instead of $640.51.

granting relief would be a substantial abuse of the Chapter 7 provisions. 11 U.S.C. § 707(b). The Fourth Circuit has adopted a totality of the circumstances test in determining whether substantial abuse has occurred: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and (5) whether the petition was filed in good faith. *In re Green,* 934 F.2d 568, 570 (4th Cir.1991). In *Green,* the Court further held

> Exploring these factors, as well as the relation of the debtor's future income to his future necessary expenses, allows the court to determine more accurately whether the particular debtor's case exemplifies the real concern behind Section 707(b): abuse of the bankruptcy process by a debtor seeking to take unfair advantage of his creditors.

*Id.* at 572. As the Fourth Circuit pointed out, the vast majority of circuit courts have held that the debtor's ability to repay is the primary factor to be considered. *Id.*

The Trustee argues that the Bankruptcy Court erred in granting Chapter 7 relief. I agree. Under the multi-factor test set forth in *Green,* granting the Harrelsons Chapter 7 relief would result in the substantial abuse of Chapter 7 provisions.

Under the first factor, the bankruptcy petition was not filed because of sudden illness, calamity, disability, or unemployment. Courts have held that this factor weighs in favor of substantial abuse when filing is not due to some "unforeseen tragedy." *In re Norris,* 225 B.R. 329, 333

(Bank.E.D.Va.1998); *see In re Vansickel,* 309 B.R. 189, 211 (Bank.E.D.Va.2004). The Harrelsons assert that the first factor requires a court to look more generally at the reason behind the filing. Even so, it is clear that the Harrelsons did not file due to an unforeseen tragedy. Rather they filed because of sizeable debt which they gradually incurred over the years. Therefore, the first factor weighs in favor of a substantial abuse finding.

Under the second factor, it does not appear that the Harrelsons made consumer purchases far in excess of their ability to repay. In *Vansickel,* a bankruptcy court held that this factor did not weigh in favor of substantial abuse when the debtor had "relatively modest" debts including $28,000 in unsecured debt, and there was no specific evidence of what was purchased and when. *Vansickel,* 309 B.R. at 211. The *Vansickel* Court held that due to the statutory presumption in granting a debtor bankruptcy relief, the Trustee did not meet his burden of proof in establishing substantial abuse under the second factor. *Id.* On the other hand, another district court held that this factor did weigh in favor of substantial abuse when debtors incurred over $90,000 of unsecured debt, lived in an expensive home, dined out, and utilized their 401K plans to create a reserve fund for future expense. *Norris,* 225 B.R. at 333. Furthermore, another district court held this factor weighed in favor of substantial abuse when debtors purchased a $4,000 bedroom suite, spent $1,000 a month for their daughter's college expenses, made cash advances on credit cards for repairs for a home "they could not afford, but were unwilling to leave," and when they purchased two new cars. *Shaw v. U.S. Bankruptcy Administrator,* 310 B.R. 538, 540–41 (M.D.N.C.2004).

The determination of the second factor on the facts of this case is a close call.

Most of the Harrelsons' debt is consumer debt on four cars, cell phones for the whole family, cable with internet, etc., all of which they can not afford. Like the couple in *Shaw*, they pay for their adult children's college expenses and make multiple car payments. On the other hand, the Harrelsons spend substantially less on college expenses than the couple in *Shaw*, and their newest car is a 1995 Saturn Coupe. The amount of the Harrelsons' unsecured debt, $38,000, is substantially less than the $90,000 debt incurred by the irresponsible debtor in *Norris*, and the Harrelsons do not live in an expensive home. The Harrelsons' debt is more in line with the $28,000 debt of the debtor in *Vansickel* in which the court held that the debtor did not incur consumer debt far in excess of his ability to pay. Moreover, as the Trustee admitted, no lavish lifestyle is apparent from their schedules. Therefore, the second factor appears to weigh against a finding of substantial abuse.

Under the third factor, the proposed family budget is excessive and unreasonable. The Harrelsons are paying for their adult children's college expenses and the taxes of one of the Harrelsons' mothers. They are under no duty to pay for either of these debts. In addition, the Harrelsons are paying for luxuries that are unreasonable in light of their financial situation including cell phones for the whole family and cable and internet connections. Therefore, the proposed family budget is excessive and unreasonable so that the third factor weighs in favor of a finding of a substantial abuse determination.

Under the fourth factor pertaining to the accuracy of the representation of the debtors' financial condition, the Trustee argues that the Bankruptcy Court erred in discounting the inaccuracies. I agree. The Court apparently disregarded this factor because it believed that the Harrelsons

had no motive to misrepresent their finances. The *Green* test, however, explicitly makes inaccuracy of schedules and statements a factor that a court must weigh in analyzing a substantial abuse claim. The possible lack of a motive does not negate the fact that the Fourth Circuit has held that inaccuracy is a factor and therefore relevant. The Harrelsons' schedules and statement of income did not reasonably and accurately reflect their true financial condition. In *Vansickel*, the court held that a debtor's schedules and statements of income did not reasonably reflect his true financial condition when he overestimated monthly deductions from his paycheck by approximately $400. *Vansickel*, 309 B.R. at 197. In comparison, the Harrelsons understated their gross monthly income by $740.51, which by itself is enough to pay 68% of all unsecured debt and which exceeds the amount of the error in *Vansickel*. Therefore, the fourth factor weighs in favor of a finding of substantial abuse.

Under the fifth factor, there is no evidence that the Harrelsons filed in bad faith. The Harrelsons entered credit counseling for several years to pay their debts, and they did not have a lavish lifestyle. Furthermore, the Trustee has not stated that the Harrelsons filed in bad faith. Therefore, the fifth factor weighs against a substantial abuse finding.

 Finally, I agree with the Trustee that the Bankruptcy Court erred in not considering the Harrelsons' ability to repay their debts. As the courts have continually recognized, the ability to repay, although not a dispositive factor, is the primary factor in determining substantial abuse. *Shaw*, 310 B.R. at 540; *Norris*, 225 B.R. at 331–32. In this case, the Bankruptcy Court disregarded the Harrelsons' ability to repay their debt because it found that the ability to repay *alone* was

not sufficient for a substantial abuse finding. But the totality of the circumstances test in *Green* requires courts to examine several factors and make a decision based on the *totality* of the circumstances. A court may not dismiss debtors' ability to repay debts as an irrelevant factor. On the contrary, it is the primary factor in determining substantial abuse. And the Harrelsons' ability to repay their debts certainly weighs in favor of a substantial abuse determination. Courts have held that a debtor's ability to repay weighed in favor of a substantial abuse finding when the debtors could only pay 29% and 47% of their unsecured debt over a period of three years. *Shaw*, 310 B.R. at 540; *Norris*, 225 B.R. at 332. In this case, the Harrelsons may be able to pay 100% of their unsecured debt in three years. Therefore, this factor must weigh heavily in favor of a substantial abuse finding.

In conclusion, the Bankruptcy Court erred in failing to consider the Harrelsons' ability to repay their debts under a Chapter 13 plan as well as the inaccuracy of the representation of the Harrelsons' financial condition. Furthermore, the Harrelsons did not file due to an unforeseen tragedy, and their proposed budget was excessive and unreasonable. Therefore, I find that granting the Harrelsons Chapter 7 relief would result in substantial abuse of Chapter 7 provisions.

### CONCLUSION

For the reasons stated above, I hereby **REVERSE** the decision of the Bankruptcy Court and **REMAND** the case to the Honorable William E. Anderson, United States Bankruptcy Judge, for conversion into a Chapter 13 filing at his discretion, or in the alternative, for dismissal.