In re Robert J. BURGER and Stacia L. Burger, Debtors.

No. 01–14930–JKC–7.

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

May 1, 2002.

Kevin Dempsey, Acting U.S. Trustee, Indianapolis, IN, for Creditor–Objector.

Gary Landau, Buck Berry Landau & Breunig, Indianapolis, IN, for Debtors.

### ORDER GRANTING MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)

JAMES K. COACHYS, Bankruptcy Judge.

This matter comes before the Court on the United States Trustee's Motion to Dis-

miss Pursuant to 11 U.S.C. § 707(b) against Debtors Robert J. Burger and Stacia L. Burger (the "Debtors"). Following a hearing on March 28, 2002, at which the Debtors appeared in person and by counsel and the United States Trustee appeared by attorney Charles R. Wharton, the Court took the matter under advisement and now issues the following order, wherein it finds that relief under Chapter 7 in this case would constitute a "substantial abuse."[1]

The Debtors commenced a case under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Code"), on September 28, 2001. Their petition indicates that they have secured debt in the total amount of $157,700.00, related to a home mortgage, home equity loan and two car loans. The petition also indicates unsecured debt in the total amount of $35,691,00, primarily related to various check-cashing loans, consumer-related credit card purchases and a vacation time share.[2]

Per Schedule I of the petition, Mr. Burger has been employed for 17 years at Graphic Arts Center, where he currently serves as a supervisor. Schedule I indicates that his monthly net salary is $3,507.54. Evidence presented at the hearing establishes that this figure has increased by $260.00 each month, based on an adjustment made, at the Trustee's suggestion, to his tax withholding status. For the past year or so, Mrs. Burger has worked as a claims adjuster for Hartford Insurance. Her monthly net salary is $1,841.94. Together, the Debtors bring home approximately $5,609.48 each month in income. Debtors' Schedule J, as originally filed, indicated monthly expenses of $4,517.98. However, they have filed a First and Second Amended Schedule J, the latter of which indicates monthly expenses of $5,721.98. The Debtors have two dependent children, ages 9 and 5.

The Trustee has moved to dismiss the Debtor's petition for "substantial abuse" pursuant to Code § 707(b). The Trustee's motion challenges Mr. Burger's excessive federal tax withholding, the Debtors' stated intention to reaffirm their vacation time share, and a discrepancy in the Debtors' listed expense for child care. At the hearing, however, the Debtors testified that Mr. Burger has already adjusted his withholding status from "0" to "2" exemptions and that they have decided not to reaffirm their vacation time share. They also presented evidence to support the $860.00 for child care listed in their Second Amended Schedule J. Nevertheless, the evidence presented by the Trustee raises other issues for the Court regarding the propriety of the Debtors' Chapter 7 filing.

### Discussion and Decision

Section 707(b) of the Code provides:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

The statute does not define "substantial abuse" and, not surprisingly, courts are

---

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A) and (O).

2. Pursuant to § 707(b), the Court concludes that the Debtors' obligations are primarily consumer debts.

divided as to its meaning. The circuit courts have devised three main approaches. The Eighth and Ninth Circuits hold that a debtor's ability to pay his debts, standing alone, justifies a § 707(b) dismissal. *See United States Trustee v. Harris,* 960 F.2d 74, 76–77 (8th Cir.1992); *In re Kelly,* 841 F.2d 908, 914–15 (9th Cir.1988). The Fourth Circuit has rejected this "per se" rule and has, instead, adopted a "totality of the circumstances" test, according to which, the following five factors are to be considered:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases in excess of his ability to pay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition;

(5) Whether the petition was filed in good faith.

*See In re Green,* 934 F.2d 568 (4th Cir. 1991).

■ The Sixth Circuit has devised a test that is something of a "hybrid" of the totality of the circumstances and *per se* tests. Under this test, the court must first examine the debtor's ability to repay his creditors out of future earnings. *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989). Like the Eighth and Ninth Circuits, that factor alone may be sufficient to warrant dismissal. *Id.* However, the court should also consider other factors in determining a debtor's "neediness" under Chapter 7, *i.e.,* whether the debtor is eligible under Chapter 13 of the Code; whether there are any state remedies that could ease the debtor's financial predicament; the degree of relief obtainable through private negotiations, and whether the debtor's expenses can be significantly reduced without depriving him of adequate food, clothing, shelter and other necessities. *Id.* The court should also consider the debtor's "good faith and candor" in filing the petition and schedules, whether he or she has engaged in " 'eve of bankruptcy purchases,' " and whether he was forced into Chapter 7 by unforeseen or catastrophic events. *Id.*

This Court is persuaded that the Sixth Circuit's "hybrid test" is the most sound. The *per se* test advocated by the Eighth and Ninth Circuits is rather harsh, and fails to consider factors beyond income that may justify relief under Chapter 7. However, the factors articulated by the Fourth Circuit, while relevant to a substantial abuse inquiry, seem to equate bad faith with substantial abuse. Because the requirement that a Chapter 7 petition be filed in good faith is found elsewhere in the Code, *see In re Zick,* 931 F.2d 1124, 1126 (6th Cir.1991) (citing § 707(a)), the Court disagrees that substantial abuse and bad faith are synonymous. Thus, the Sixth Circuit's approach, in focusing on the debtor's disposable income but acknowledging that other mitigating factors may be relevant, appears to be the most equitable approach.

■ In applying the Sixth Circuit's approach here, the Court must first determine the Debtors' "disposable income." For 707(b) purposes, a debtor's ability to pay creditors is measured by evaluating the debtor's financial condition in a hypothetical Chapter 13 proceeding. *In re Beckel,* 268 B.R. 179, 182 (Bankr.N.D.Iowa 2001) (*citing In re Koch,* 109 F.3d 1285, 1288 (8th Cir.1997) and *In re Walton,* 866 F.2d 981, 983 (8th Cir.1989)). Under

Chapter 13, the debtor's plan must provide that all disposable income be applied to plan payments for at least three years. 11 U.S.C. § 1325(b)(1)(B). "Disposable income" is defined as that which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2)(A).

■■■ What income is "reasonably necessary" to the debtor's maintenance and support is subject to debate. While Chapter 13 debtors are not required to adopt a totally spartan existence, they are not permitted to continued an extravagant lifestyle at the expense of creditors. *Beckel,* 268 B.R. at 183 (*citing In re Webb,* 262 B.R. 685, 692 (Bankr.E.D.Tex.2001)). Debtors should be allowed to maintain a reasonable lifestyle while simultaneously insuring they make a serious effort to pay creditors by eliminating unnecessary and unreasonable expenses. *Id.* (*citing In re Zaleski,* 216 B.R. 425, 431 (Bankr.D.N.D. 1997)). Section 1325(b) contemplates "some sacrifices or alternation in prepetition consumption levels by debtors, while allowing them to sustain basic needs not related to their former lifestyle." *Id.* (*citing Webb,* 262 B.R. at 692; *In re Jones,* 55 B.R. 462, 467 (Bankr.D.Minn.1985)). In discussing the disposable income standard in the context of Chapter 12 of the Code, the Seventh Circuit stated the following:

> A fundamental purpose of the disposable income provision is to prevent large expenditures by debtors for non-essential items which ultimately reduce the sum available to pay holders of unsecured claims.... This Court ... will not permit [the debtor] to acquire goods or services not reasonably necessary for support at the expense of the unpaid, unsecured creditors. The purposes of [the disposable income test] would be ill-served if the Court were to allow the debtor in the instant case to [finance] purely recreational property not reasonably necessary for maintenance or support of the debtor ... while his general unsecured creditors are to receive, over an extended period of time, less than half of the total amount of their claims.

*In re Fortney,* 36 F.3d 701, 704 (7th Cir. 1994) (*citing In re Hedges,* 68 B.R. 18, 20–21 (Bankr.E.D.Va.1986)).

■■■ Some expenditures, such as reasonable amounts for food, clothing and shelter, are clearly "reasonably necessary" for the debtor's maintenance. While a Chapter 13 debtor is allowed some latitude regarding "discretionary spending," an unreasonably large amount devoted to discretionary expenses may support a finding of substantial abuse. Discretionary spending has been held to include gifts, entertainment, newspapers, magazines, cable television, internet costs, cell phones, veterinary expenses, unspecified home repairs, deductions for voluntary retirement funds, private school tuition, health and country club fees, and payments for luxury items, including boats and campers. *See Beckel,* 268 B.R. at 183 (*citing* 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 165.1 (3d ed.2000); *In re Attanasio,* 218 B.R. 180, 201–10 (Bankr.N.D.Ala.1998)).

■■■ The Debtors' Second Amended Schedule J indicates monthly expenses of $5,721.98, including expenses of $200.00 for recreation, $200.00 for a vacation fund, $22.00 for internet access, $75.00 for the children's "ballet and swim lessons and other activities," and $150.00 for the children's educational fund. The Debtor's monthly budget of $860.00 for "child care including summer camp" is largely attributable to parochial school tuition for the Debtors' children. Mrs. Burger testified that tuition for both children totals $5,250.00 and that another $750 per year is needed for school uniforms. Spread out

over a year, this amounts to $500.00 each month. All of the above expenses total $1147.00 each month, or $41,292.00 over 36 months.

The Court must conclude that all of these expenses are properly classified as "discretionary," as they are not reasonably necessary to maintain the Debtors or their dependents.[3] If these funds were made available to fund a Chapter 13 plan for the three-year minimum, depending on the administrative costs and the amount in claims filed, the Debtors could potentially pay their creditors in full.[4] Thus, the Court must conclude that the Debtors possess significant "disposable income" and that relief under Chapter 7 constitutes a "substantial abuse."

In examining the evidence, the Court is unable to identify any significant factors which compels a different conclusion. The Debtors' financial difficulties appear to spring from mismanagement and over-spending, not from catastrophic or unforeseen circumstances. While Mrs. Burger testified that her husband's employer has laid off or terminated part of its workforce, she did not indicate that his job has specifically been threatened and he was, as of the hearing date, gainfully employed. Should he lose his job, the parties will be free to refile under Chapter 7 or, if they choose to convert this case to one under Chapter 13, to reconvert.

As suggested above, the Debtors are qualified to file under Chapter 13 of the Code, *see* 11 U.S.C. § 109(e). While the Debtors cannot be forced to convert their case, the Court believes that the discipline required to successfully complete a plan will help them better manage their money, which by Mrs. Burger's own admission, is the problem that compelled their bankruptcy in the first place. The Court does not believe that the reductions needed in the Debtors' budget to fund a Chapter 13 plan will deprive them of basic necessities, as their budget already includes reasonable amounts for such things as food, clothing, transportation, and shelter.

### Conclusion

Based on the foregoing, the Court must conclude that relief under Chapter 7 in this case would amount to a "substantial abuse" under 11 U.S.C. § 707(b). The Debtors are given 21 days from the date of this Order to convert their case to one under Chapter 13 of the Code; otherwise, the case will be dismissed.

**IT IS SO ORDERED.**

---

3. The Court would be less inclined to classify the children's tuition as "discretionary" if it appeared that they had previously attended parochial school. Mrs. Burger testified that her son will be starting kindergarten in August of 2002. She further indicated that her daughter had recently been taken off the school's "wait list" and that she went ahead and registered her for the 2002–2003 school year. From this, the Court assumes that the Debtors' daughter has not previously attended the parochial school, but has instead been enrolled at the public school. However, even without factoring this expense, the Court would still conclude that Chapter 7 relief in this case constitutes a substantial abuse.

4. The Court is not necessarily suggesting that the Debtors must eliminate all of their discretionary expenses. Ultimately, if they choose to convert their case to one under Chapter 13 of the Code, it will be incumbent upon them to propose a plan based on a budget which passes muster with the Chapter 13 trustee. Should the trustee make a "best efforts" objection to their plan, the Court will then determine which expenses must necessarily be reduced or eliminated.