**In re Alberta Diane JOHNSON, aka Diane Johnson, Debtor.**

**Felicia S. Turner, United States Trustee, Movant,**

v.

**Alberta Diane Johnson, Respondent.**

**No. 03–99063–CRM.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 10, 2005.

---

Joseph Chad Brannen, Stockbridge, GA, for Debtor.

R. Jeneane Treace, Office of U.S. Trustee, Atlanta, GA, for U.S. Trustee.

## ORDER

C. RAY MULLINS, Bankruptcy Judge.

**THIS MATTER** is before the Court on the United States Trustee's Motion to Dismiss (the "Motion to Dismiss") (Doc. No. 17). On January 26, 2004, the Debtor filed the Response to United States Trustee's Motion to Dismiss (the "Response") (Doc. No. 19). On January 27, 2004, a non-evidentiary hearing was held on the Motion to Dismiss, and the Court permitted the parties to file supplemental briefs. The United States Trustee (the "Trustee") filed its Statement of Undisputed Facts (Doc. No. 20), and the Debtor filed her Affidavit (Doc. No. 23). Thereafter, the Trustee filed its Reply to Debtor's Response to Motion to Dismiss (the "Trustee's Reply") (Doc. No. 27).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), as well as Rule 1070–1 of the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

The issue is whether the Debtor's case should be dismissed pursuant to section 707(a) and/or section 707(b) of the Bankruptcy Code because a significant amount of her income is applied to a monthly mortgage payment. For the following reasons, the Court holds that the Debtor's case should not be dismissed pursuant to section 707(a) for bad faith or pursuant to section 707(b) for substantial abuse.

## I. FACTS

The Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on August 26, 2003. Schedule I indicates that the Debtor is a widow and supports a teen-age son. According to the Debtor's Affidavit, the failure of her trucking business, DTJS Systems, caused her bankruptcy. The Debtor scheduled secured debt in

the amount of $442,100.00 and unsecured debt in the amount of $29,184.76. The Debtor's $348,000.00 mortgage accounts for 73.84% of the total debt. Trustee's Reply at 3. This mortgage is secured by a 4,800 square foot house in Henry County which the Debtor values at $358,000.00 on Schedule A and the Henry County Tax Assessor values at $367,500.00.[1] Statement of Undisputed Facts. The Debtor made a $25,000.00 down payment when she purchased the subject property. Statement of Undisputed Facts. The Debtor is a Department Manager for the Internal Revenue Service and earns $62,186.00 per year. Statement of Undisputed Facts. The Debtor's monthly income is $4,369.00, including $1,000.00 in social security survivor benefits received on behalf of her minor son. Schedule I. The monthly mortgage payment, $2,897.00, constitutes 66.3% of her monthly net income. Statement of Undisputed Facts. The Debtor will soon no longer receive social security benefits, and the mortgage payment will constitute 85.99% of her monthly net income. Statement of Undisputed Facts. The Debtor's monthly mortgage payment is 265% greater than the average mortgage cost in Henry County for the year 2000, which was $1,094, and the Debtor's residence is within the 2.7% most expensive homes in Henry County.[2] Statement of Undisputed Facts.

## II. CONCLUSIONS OF LAW
### A. SECTION 707(a)

■ The Trustee argues that the Debtor's case should be dismissed for bad faith,

or for lack of good faith, which constitutes cause for dismissal under section 707(a). Section 707(a) provides:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
>
> > (1) unreasonable delay by the debtor that is prejudicial to creditors;
> >
> > (2) nonpayment of any fees and charges required under chapter 123 of title 28; and
> >
> > (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a). As noted by the Trustee, the examples listed are merely illustrative, and a case may be dismissed on other grounds when cause is found to exist.[3] *See* H.R. REP. NO. 95–595, at 380 (1977), reprinted in 1978 U.S.S.C.A.N. 5963, 6336; S. REP. NO. 95–989, at 94 (1978), reprinted in 1978 U.S.S.C.A.N. 5787, 5880; *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1191 (9th Cir.2000); *Indus. Ins. Serv., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126 (6th Cir.1991); *In re Atlas Supply Corp.*, 857 F.2d 1061, 1063 (5th Cir.1988); *Shangraw v. Etcheverry (In re Etcheverry)*, 242 B.R. 503, 505 (D.Colo.1999); *In re Horan*, 304 B.R. 42, 45 (Bankr.D.Conn.2004); *In re Carbaugh*,

---

1. Thus, it appears that there is approximately $10,000 to $19,500 of equity in the property.

2. According to the Census Summary for the 2000 Census of Population and Housing for Henry County, Georgia, issued by U.S. Census Bureau, the median household income was $57,309 in 1999 and the median family in-

come was $61,607. Available at http://www.co.henry.ga.us/HomePageMisc /HenryCountyCensus2000Summary.pdf (last visited January 10, 2005).

3. Section 102(3) of the Bankruptcy Code defines the terms "includes" and "including" as "not limiting" when used in title 11. 11 U.S.C. § 102(3).

299 B.R. 395, 397 (Bankr.D.Tex.2003). Although the Eleventh Circuit has not decided whether bad faith is cause for dismissal under section 707(a), it has ruled that bad faith is grounds for dismissing a chapter 11 case under section 1112. *See Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir. 1984). The Trustee relies on the Sixth Circuit's ruling in *Industrial Insurance Services, Inc. v. Zick (In re Zick)* that good faith is a jurisdictional requirement for chapter 7 relief. 931 F.2d 1124, 1129–30 (6th Cir.1991). *See also Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205 (3d Cir.2000) (holding that "bad faith" in filing the petition constitutes "cause" for dismissal). *But see Padilla*, 222 F.3d at 1191; *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 832 (8th Cir.1994); *In re Khan*, 172 B.R. 613, 620–26 (Bankr. D.Minn.1994). While citing to Florida case law where chapter 7 cases have been dismissed for bad faith,[4] the Trustee primarily focuses on a bankruptcy case from the Southern District of Georgia, *Walton v. Smith (In re Smith)*, 229 B.R. 895 (Bankr.S.D.Ga.1997) (Dalis, J.).

In *Smith*, the court dismissed the case pursuant to both sections 707(a) and 707(b) after concluding that the petition was filed in bad faith and thus to grant chapter 7 relief would constitute substantial abuse of the bankruptcy process. *Id.* at 899. After reviewing the debtors' income, mortgage payments, and expenses, the court found that "the Debtors' [*sic*] maintaining their current home at the expense of their unsecured creditors and . . . attempting to discharge that accumulated unsecured debt constitute[d] bad faith." *Id.* at 898. The court also criticized the debtors' lease of a

Lexus in the amount of $571 per month shortly before filing bankruptcy. Ultimately, the court ruled that "[t]he Trustee argues that the Debtors filed this petition in bad faith under § 707(a) because they failed to substantially reduce their expenses prior to the filing and because the filing is an attempt to preserve a standard of living above that which the Debtors can afford. I agree with the Trustee's analysis." *Id.* at 898. The Trustee argues that the Debtor, as in *Smith*, exhibits bad faith in sustaining excessive housing costs at the expense of her unsecured creditors, and thus the case should be dismissed.

The Debtor asserts that the Court must consider whether the "totality of circumstances" warrant the dismissal of the case for cause. The Debtor contends that the failure of her business, DTJS Systems, caused the filing. The Debtor also alleges "[w]hile certain debts listed in [the Debtor's] case are certainly not business related, the bulk of the debts were incurred in the operation and failure of her business." Debtor's Response at 5. The Debtor concedes that the mortgage payment is substantial, but contends that her lifestyle is not extravagant or lavish. The Debtor asserts that she can maintain the mortgage payment because her budget is reasonable. Moreover, the Debtor argues that the size of the mortgage payment alone does not constitute cause to dismiss the case.

"[T]he power to dismiss a chapter 7 case for lack of good faith, if it exists at all, is extremely limited." 6 Lawrence P. King et al., Collier on Bankruptcy, ¶ 707.03 (15th ed. rev.2003). Although the Trustee has cited case law holding that bad faith,

---

**4.** *See In re Sammons*, 210 B.R. 197 (Bankr. N.D.Fla.1997); *In re Tanguay*, 206 B.R. 575 (Bankr.M.D.Fla.1997); *In re Davidoff*, 185 B.R. 631 (Bankr.S.D.Fla.1995); *In re Ripley & Hill, P.A.*, 176 B.R. 596 (Bankr.M.D.Fla. 1994); *In re Creazzo*, 172 B.R. 657 (Bankr. M.D.Fla.1994). *See also Turner v. United States (In re Turner)*, 195 B.R. 476 (Bankr. N.D.Ala.1996).

or lack of good faith, is grounds for dismissal under section 707(a), jurisdictions that apply this standard do so with care. The Trustee relies upon *Zick,* in which the Sixth Circuit cautioned:

> Dismissal based on lack of good faith must be undertaken on an *ad hoc* basis. *In re Brown,* 88 Bankr. [280] at 284 [(Bankr.D. Hawai'i 1988)]. It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish life-style, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

*Id.* at 1129. The Third Circuit has also ruled that bad faith constitutes cause for dismissal, but advises that "[c]ourts ... must decide whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law." *Tamecki,* 229 F.3d at 207 (citing *In re Marks,* 174 B.R. 37, 40 (E.D.Pa.1994)). *See also Carbaugh,* 299 B.R. at 399 ("the facts have to be extraordinary to justify the dismissal of a Chapter 7 liquidation case for bad faith"). Other circuits have rejected the bad faith standard. *Padilla,* 222 F.3d at 1191 ("[W]e agree with the Eighth Circuit that bad faith as a general proposition does not provide 'cause' to dismiss a Chapter 7 petition under § 707(a)."); *Huckfeldt,* 39 F.3d at 832 ("... the court in *Khan* urged that bad faith under § 707(a) be limited to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction. *Khan,* 172 B.R. 613. We agree with the narrow, cautious approach to bad faith adopted in *Khan.*"). *See also Khan,* 172 B.R. at 620–26 (criticizing the adoption of the bad faith inquiry without statutory authority). These courts have applied the statutory standard "for cause." *Horan,* 304 B.R. at 45. The Eleventh Circuit has not ruled on this issue, therefore, the Court will carefully consider all of the facts and circumstances to determine whether "cause," including, but not limited to, bad faith, exists for dismissal. *See In re Bilzerian,* 258 B.R. 850, 856 (Bankr.M.D.Fla.2001).

Dismissal of a petition, particularly for bad faith or lack of good faith, is within the discretion of the bankruptcy court, and the court must balance the equities and consider the benefits and prejudice of dismissal. *Tamecki,* 229 F.3d at 207; *Zick,* 931 F.2d at 1126, *Atlas Supply Corp.,* 857 F.2d at 1063; *In re Green,* 64 B.R. 530, 530–31 (9th Cir. BAP 1986); *Deglin v. Keobapha (In re Keobapha),* 279 B.R. 49, 51 (Bankr.D.Conn.2002) (quoting *In re Marra,* 179 B.R. 782, 785 (M.D.Pa. 1995)). The burden is on the moving party to demonstrate that cause exists for dismissal. *Dionne v. Simmons (In re Simmons),* 200 F.3d 738, 743 (11th Cir.2000). The Trustee contends that "the Debtor's choice to continue to make $2,897.00 in mortgage payments each month greatly exceeds the boundaries of reasonableness." Motion to Dismiss at 3. The Trustee further argues that the Debtor's bad faith in favoring excessive housing costs over repayment of creditors warrants dismissal for cause pursuant to section 707(a). *Id.* Even if this Court decided that bad faith may constitute cause for dismissal, the Trustee must challenge the Debtor's good faith, "put[ting] on evidence sufficient to impugn that good faith." *Tamecki,* 229 F.3d at 207. *See also Horan,* 304 B.R. at 48. In the instant case, the Trustee did not present adequate evidence to impugn the Debtor's good faith filing.

The sole basis of the Trustee's argument for dismissal is the size of the

Debtor's mortgage. There are no allegations of questionable conduct or dishonesty such as multiple case filings, fraudulent transfers, misrepresentations or omissions in the Schedules or Statement of Financial Affairs, attempts to manipulate creditors, or filing to impact pending litigation or otherwise avoid obligations. *See Zick*, 931 F.2d at 1128; *In re Spagnolia*, 199 B.R. 362, 365 (Bankr.W.D.Ky.1995). Even if bad faith is the accepted standard in the Eleventh Circuit, the size of the Debtor's mortgage alone does not constitute bad faith. Moreover, the Trustee's reliance on *Smith* is misplaced. In *Smith*, the court held "[t]he failure of the Debtors to make substantial reductions in their monthly expenses as evidenced by their attempt to maintain a home worth in excess of $200,000.00 and by executing a lease on a luxury automobile at $571.00 per month immediately prior to filing bankruptcy constitutes bad faith warranting dismissal of their petition under § 707(a)." 229 B.R. at 898. In addition to the mortgage, the court considered all of the debtors' expenses. *Id.* The court also observed that "[d]espite the fact that both Debtors are licensed real estate agents, they have made no effort to sell their home to move into more reasonable living accommodations following their reduction in income three years prior to filing the case." *Id.* Clearly, the circumstances of the *Smith* case vary from the facts in the instant case. The only aspect of the Debtor's budget that the Trustee has asserted is unreasonable is the mortgage. Finally, the Trustee essentially challenges the Debtor's ability to pay debts, which is an issue to be considered under section 707(b), not section 707(a). Accordingly, the Court finds that the Debtor's case should not be dismissed pursuant to section 707(a) for cause, including bad faith or lack of good faith.

## B. SECTION 707(b)

In the alternative, the Trustee argues that the case should be dismissed because allowing the Debtor to discharge her unsecured debt while committing a substantial portion of her income to excessive housing expenditures constitutes substantial abuse pursuant to section 707(b). The provision provides:

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

11 U.S.C. § 707(b). There is a presumption in favor of granting relief, and thus the Trustee bears the burden of demonstrating substantial abuse by satisfying the two requirements set forth in the statute. The first prerequisite for dismissal is a determination that the debtor's debts are primarily consumer debts. The second requirement is a finding by the court that granting the debtor's petition would be a "substantial abuse" of chapter 7.

The Trustee contends that the Debtor's obligations are primarily consumer debts, while the Debtor argues that her debts are not primarily consumer debts. Although

the Debtor did not contest this fact listed on the Statement of Stipulated Facts, the Debtor filed an Affidavit explaining how some of the debt was incurred from the operation of her failed business. It appears that the Debtor's unsecured debt in the amount of $29,184.76 may not be in the nature of consumer debt. Nonetheless, the Trustee alleges that the majority of the debt, in particular the $348,000.00 mortgage, is consumer debt. The Debtor fails to address or dispute the nature of the secured debt.

Whether a particular secured debt constitutes "consumer debt" depends on the purpose of the debt. Section 101(8) of the Bankruptcy Code defines the term "consumer debt" as "debt incurred by an individual primarily for a personal, family or household purpose[.]" 11 U.S.C. § 101(8). "There is no suggestion in this statutory language that a debt which is secured by real property cannot constitute consumer debt." *In re Dickerson,* 166 B.R. 480, 483 (Bankr.N.D.Ga.1993) (Murphy, J.). Thus, secured debt incurred to purchase a home, i.e., a residential mortgage, is consumer debt. *Id.; Price v. United States Trustee (In re Price),* 353 F.3d 1135, 1139 (9th Cir.2004); *Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 912–13 (9th Cir.1988); *In re Dickerson,* 193 B.R. 67, 70 (Bankr.M.D.Fla.1996). In the instant case, the mortgage, a consumer debt

in the amount of $348,000.00, accounts for 73.4% of the Debtor's total debt of $471,284.76.[5] The Court finds that the Debtor's obligations are primarily consumer debts.

Having established the first prerequisite, the Trustee argues that the Debtor has the ability to repay her creditors, and thus the case should be dismissed. The Trustee contends that the "primary" or dispositive factor indicative of substantial abuse is the ability to repay. *United States v. Harris,* 960 F.2d 74, 76–77 (8th Cir.1992); *Kelly,* 841 F.2d at 914; *In re Walton,* 866 F.2d 981, 984 (8th Cir.1989); *Matter of Strange,* 85 B.R. 662, 664 (Bankr.M.D.Ga.1988). Even if the Court were to consider the "totality of the circumstances," the Trustee reasons that the ability to repay, alone, constitutes substantial abuse. *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989). The Trustee relies on *In re Burger,* for the proposition that the debtor's ability to repay debts—through the funding of a chapter 13 plan—is the primary factor in determining whether the granting of relief would constitute substantial abuse. 280 B.R. 444, 447 (Bankr. S.D.Ind.2002). Applying a "projected disposable income" test to evaluate the debtor's ability to pay creditors, the Trustee alleges that the Debtor has disposable income available to fund a hypothetical chapter 13 plan.[6] *Id. See also In re Beckel,*

---

**5.** Although the Debtor contends that some debts are business related, the Debtor fails to address the meaning of "primarily," and whether the debts are primarily consumer or non-consumer. Nonetheless, consumer debt exceeding 73% of the total debt constitutes "primarily" consumer debt. *Stewart v. United States Trustee (In re Stewart),* 175 F.3d 796, 808 (10th Cir.1999) (defining "primarily" as "meaning consumer debt exceeding fifty percent of the total debt."); *In re Booth,* 858 F.2d 1051, 1055 (5th Cir.1988) ("It has been noted, we believe correctly, that 'primarily' suggests an overall ratio of consumer to nonconsumer debts of over fifty percent. Furthermore, the

consumer debts should be evaluated not only by amount, but by their relative number.") (citing *In re Restea,* 76 B.R. 728, 735 (Bankr. D.S.D.1987)); *In re Kelly,* 841 F.2d 908, 913 (9th Cir.1988) (" 'Primarily' means 'for the most part.' Webster's Ninth New Collegiate Dictionary 934 (1984). Thus, when 'the most part'—i.e., more than half-of the dollar amount owed is consumer debt, the statutory threshold is passed."). *See also Price,* 353 F.3d at 1139.

**6.** "Disposable income" is defined in chapter 13 as "income which is received by the debtor and which is not reasonably necessary to be

268 B.R. 179, 182–84 (Bankr.N.D.Iowa 2001). Moreover, the Trustee contends that the Court is not bound by the Debtor's actual expenses when determining the amount of available disposable income. Once again, the Trustee focuses on the reasoning in *Walton v. Smith* (*In re Smith*), 229 B.R. 895 (Bankr.S.D.Ga.1997).

In *Smith,* the court found that three factors established substantial abuse of the chapter 7 process: (1) the debtors exhibited bad faith in filing the petition; (2) the debtors suffered no calamity which precipitated the filing, and that the filing merely resulted from their excessive spending; and (3) the debtors had the ability to repay all or a substantial portion of their unsecured debt. 229 B.R. at 899–900. The court ruled that if the debtors reduced unreasonable and unnecessary expenses, including, but not limited to, a monthly mortgage payment and a luxury car lease, the debtors would be able to repay their unsecured creditors in a chapter 13 plan. *Id.* Comparing *Smith* to the instant case, the Trustee argues that the Debtor's monthly housing expense is excessive and, though shelter is a basic necessity, extravagant amounts expended on housing should be deemed disposable income. *Beckel,* 268 B.R. at 183.

The Debtor claims that she could not provide for a meaningful repayment of the debt, as her disposable income pays reasonable and necessary living expenses for herself and her minor son. Citing *In re Krohn,* the Debtor attests that there is nothing in the record indicating that the Debtor has acted in any manner that shows a lack of honesty. 886 F.2d 123 (6th Cir.1989). Moreover, the Debtor argues that her financial condition clearly demonstrates a need for protection afforded under the Bankruptcy Code. *Id.* Ultimately, the Debtor contends that ownership of an expensive home at the time of filing is not cause for dismissal, especially where an honest debtor, living a modest and meager lifestyle, is in need of chapter 7 relief.

The term "substantial abuse" is not defined in the Bankruptcy Code or the legislative history.[7] There has been much discussion regarding the enactment of section 707(b) and what constitutes substantial abuse.[8] Several courts have analyzed the 1984 consumer credit amendment and concluded that future income potential, specifically the debtor's ability to repay his debts out of future earnings, should be considered when determining if a case should be dismissed for substantial abuse. *Kelly,* 841 F.2d at 914; *Walton,* 866 F.2d at 983; *In re Grant,* 51 B.R. 385, 392 (Bankr.D.Ohio 1985). *See also Kornfield v. Schwartz* (*In re Kornfield*), 164 F.3d 778, 784 (2d Cir.1999); *First USA v. Lamanna* (*In re Lamanna*), 153 F.3d 1, 4–5 (1st Cir.1998); *In re Koch,* 109 F.3d 1285, 1288 (8th Cir.1997); *Green v. Staples* (*In*

---

expended ... for the maintenance or support of the debtor or a dependent of the debtor...." 11 U.S.C. § 1325(b)(2)(A).

7. The term "substantial" is generally defined as "significantly great," "being largely but not wholly that which is specified," or "of ample or considerable amount, quantity, or dimensions." The term "abuse" is defined as "a corrupt practice or custom" or "wrong or improper use, misuse, misapplication, [or] perversion." Merriam–Webster's Collegiate Dictionary 5, 1174 (10th ed.1999); The American Heritage Dictionary of the English Language 6, 1284 (1976); Webster's Third New International Dictionary 8, 2280 (1976); Merriam–Webster Online Dictionary available at http://www.merriam-webster.com/. Thus, substantial abuse is *considerable* or *significant* misuse or improper use of the provisions of chapter 7.

8. The provision was added to chapter 7 by the Bankruptcy Amendments and Federal Judgship Act of 1984, Pub.L. No. 98–353, S 312, 98 Stat. 333, 355.

*re Green*), 934 F.2d 568, 572 (4th Cir.1991); *Krohn*, 886 F.2d at 126. "[I]t appears that the primary purpose for the enactment of § 707(b) was to provide for dismissal of the Chapter 7 cases of debtors who can pay their debts from their excess disposable income." *In re Lee*, 162 B.R. 31, 34 (Bankr.N.D.Ga.1993) (Murphy, J.). Some courts regard the ability to repay debt as a dispositive factor which constitutes substantial abuse. *Kelly*, 841 F.2d at 914–15; *Koch*, 109 F.3d at 1288. *See also United States Trustee v. Harris*, 960 F.2d 74, 77 (8th Cir.1992). Relying on this authority, the Trustee argues that the debtor's ability to pay is the primary, if not exclusive, factor in determining whether a case should be dismissed. Moreover, the Trustee requests that the Court adopt a "projected" disposable income test. This test appears to be the analysis applied in the *Smith* case whereby the court reduced the debtors' expenses, including an automobile lease payment and a mortgage payment. *Smith*, 229 B.R. at 899. Several other courts have also employed similar examinations of the debtor's budget, particularly discretionary expenses. *Burger*, 280 B.R. 444, 447; *Beckel*, 268 B.R. at 183–84. *See In re Attanasio*, 218 B.R. 180, 200–209 (Bankr.N.D.Ala.1998) (extensive review of the methods courts have used to calculate disposable income by considering unnecessary or unreasonable monthly expenses). The Court refuses to adopt such a test for two reasons. First, there is no clear standard to determine a debtor's "ability to pay." "Because specific factors such as the amount of repayment, the level of income, an ability to fund a chapter 13 plan, necessary expenses, and lifestyle changes cannot be fairly determined, this Court does not believe that such a standard can itself be applied fairly." *Attanasio*, 218 B.R. at 211. Moreover, "currently available" disposable income as determined from the petition is quite different from "projected" disposable income. How does one calculate "projected" disposable income, particularly concerning mortgages and car payments? The Trustee seeks to determine "projected" disposable income by simply rewriting the Debtor's budget so that the Debtor "makes some sacrifices or alterations in . . . pre-petition consumption levels." Motion to Dismiss at 9, Trustee's Reply at 6. However, if the Court followed the Trustee's recommendation, the Court goes beyond merely reducing expenses, and, in essence, forces the Debtor to make significant lifestyle changes by surrendering, selling, or abandoning property, namely the Debtor's home. The Court also refuses to adopt a projected disposable income test because, albeit important, the ability to fund a chapter 13 case is but one of many factors the Court will consider.

Several circuits have ruled that a court must evaluate the totality of circumstances when determining whether dismissal would be appropriate. *See Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796, 809 (10th Cir.1999); *Kornfield*, 164 F.3d at 780; *Lamanna*, 153 F.3d at 4; *Green*, 934 F.2d at 572. *See also Krohn*, 886 F.2d at 126 (hybird approach: among the factors to be considered is whether debtor has ability to repay his debts out of future earnings, and this factor alone may be sufficient to warrant dismissal). Generally, the majority of jurisdictions employ this analysis. One bankruptcy court has suggested that courts consider the following factors:

1) whether unforeseen or catastrophic events such as sudden illness, disability, or unemployment propelled the debtor into bankruptcy;

2) whether the debtor's standard of living has substantially improved as a result of the bankruptcy filing or essentially remained the same;

3) the debtor's age, health, dependents, and other family responsibilities;

4) the debtor's eligibility for chapter 13 relief and whether creditors would receive a meaningful distribution in a chapter 13 case;

5) the age of the debts for which the debtor seeks a discharge and the period over which they were incurred;

6) whether the debtor incurred cash advances and made consumer purchases far in excess of the ability to repay;

7) whether the debtor made any payments toward the debts or attempted to negotiate with creditors;

8) the accuracy of the debtor's schedules; and

9) whether the debtor filed the petition in good faith.

*In re Brown,* 301 B.R. 607, 611 (Bankr. M.D.Fla.2003); *In re Degross,* 272 B.R. 309, 314 (Bankr.M.D.Fla.2001) (citing *In re Green,* 934 F.2d 568 (4th Cir.1991); *In re Krohn,* 886 F.2d 123 (6th Cir.1989)). *See also Lee,* 162 B.R. at 37 (factors include "the circumstances which precipitated the filing of the bankruptcy petition, the reasonableness of the debtor's proposed family budget, the debtor's lifestyle before or after the filing of the petition, the debtor's earning potential and the financial burden which the filing of a Chapter 13 case would create.").

▇▇▇ The Eleventh Circuit has not ruled on this issue, however several bankruptcy judges in this circuit have held that the court should apply the totality of circumstances approach. *Lee,* 162 B.R. at 37; *In re Tefertiller,* 104 B.R. 513, 516 (Bankr. N.D.Ga.1989) (Drake, J.); *In re Busbin,* 95 B.R. 240, 244–45 (Bankr.N.D.Ga.1989) (Murphy, J.). *See also In re Rogers,* 168

B.R. 806, 808 (Bankr.M.D.Ga.1993) (Laney, J.); *In re Woodhall,* 104 B.R. 544, 546 (Bankr.M.D.Ga.1989) (Hershner, J.). The Court will follow the majority approach and consider the totality of the circumstances, including the factors articulated by *Brown,* and the Debtor's ability to pay as measured by what could be paid in a hypothetical chapter 13 case is not the conclusive factor.

▇▇▇ The totality of circumstances in the instant case militate against dismissal. Pursuant to the Affidavit, the failure of the Debtor's business caused the bankruptcy filing. The Debtor is a widow and is solely responsible for her minor son. Moreover, the Debtor's budget is reasonable, even frugal. As itemized on Schedule J, her expenses are as follows:

| | |
|---|---|
| Mortgage, including real estate taxes and property insurance | $2,897.00 |
| Electricity and heating fuel | $ 250.00 |
| Water and sewer | $ 20.00 |
| Telephone | $ 45.00 |
| Cable | $ 33.00 |
| Home maintenance and repair | $ 75.00 |
| Food | $ 400.00 |
| Clothing | $ 40.00 |
| Laundry and dry cleaning | $ 40.00 |
| Medical and dental expenses | $ 80.00 |
| Auto insurance | $ 260.00 |
| TOTAL EXPENSES = | $4,215.00 |

Her current monthly income is $4,369.00, and will be reduced to $3,369.00 after the social security benefits she receives on behalf of her son terminate when he reaches the age of eighteen. The Debtor's budget does not appear excessive or lavish. In addition, the Debtor has surrendered her vehicles and relies on friends for transportation. Limited information has been provided about the Debtor's unsecured debts in the amount of $29,184.76,[9] although the Debtor contends that the majority of the debt was incurred for the failed business. It appears that these debts arise from four credit cards and a wireless telephone ac-

---

9. When the debts were incurred, why the debts were incurred, whether the Debtor made any payments to creditors, etc.

count. If the Debtor was eligible for chapter 13, these creditors would not receive a meaningful distribution in a chapter 13 case. The Trustee has not questioned the accuracy or completeness of the Debtor's Schedules.

Despite these circumstances, the Trustee maintains that the Debtor's case should be dismissed because the Debtor has the ability to fund a hypothetical chapter 13 case if the Debtor's mortgage was reduced. Again, the Trustee erroneously relies on *Smith*, where the court reduced the debtors' luxury automobile lease payment and payments to the Internal Revenue Service and Georgia Department of Revenue (claims which the debtors would pay through the chapter 13 plan), in addition to the debtors' housing expense. 229 B.R. at 899. Nonetheless, several courts have observed that substantial mortgage payments are persuasive evidence of substantial abuse. *In re Mooney*, 313 B.R. 709, 714–15 (Bankr.N.D.Ohio 2004) ("If the mortgage payment on that home is so large that a debtor falls behind in payments to other creditors, eventually seeking to discharge most of these debts in Chapter 7, *while still keeping the house*, this would be a substantial abuse of the provisions of Chapter 7."); *Shaw v. United States*, 310 B.R. 538, 541 (M.D.N.C.2004) ("... Debtors' excessive mortgage payments alone are sufficient to justify the Bankruptcy Court's determination that the Debtors' budget is excessive and unreasonable. Therefore, this factor weighs against allowing Debtors' petition."). However, these courts also examined the

debtors' expenditures and found that the scheduled expenses were unreasonable and the monthly budgets were excessive. *Mooney*, 313 B.R. at 715–17. *See also Shaw*, 310 B.R. at 540–41. Moreover, in considering the totality of the circumstances, the courts decided that these debtors were not deserving of the protection afforded by chapter 7. *Mooney*, 313 B.R. at 715–17; *Shaw*, 310 B.R. at 540–41. *See also Cox v. Fokkena (In re Cox)*, 315 B.R. 850 (8th Cir. BAP 2004); *In re Schmonsees, Jr.*, 2001 Bankr.LEXIS 1869 (Bankr.M.D.N.C. September 21, 2001); *In re Engskow*, 247 B.R. 314 (Bankr.M.D.Fla. 2000).

The ability to pay alone is not sufficient to justify dismissal, nor is a substantial mortgage payment. *See* H.R. REP. NO. 95–595, at 380 (1977), reprinted in 1978 U.S.S.C.A.N. 5963, 6336 ("[Section 707] does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a nonuniform mandatory chapter 13, in lieu of the remedy of bankruptcy. The Committee has rejected that alternative in the past, and there has not been presented any convincing reasons for its enactment in this bill."). In the absence of any other evidence, the Court will not dismiss the Debtor's case. Furthermore, the evidence that the Trustee has presented—namely data concerning the average mortgage cost in Henry County for the year 2000—is not persuasive enough to warrant dismissal of the case.[10] *See Harris v. United States*

---

10. Dismissal of a chapter 7 case, particularly where chapter 11 and chapter 13 are not feasible alternatives, is tantamount to a denial of discharge under section 727, and therefore "Code § 707(b) should not be used to dismiss a case when the evidence is not quite strong enough to warrant denying a discharge under the Code § 727 or a way of overcoming a

creditor's failure to object to the dischargeability in a timely fashion as required by Code § 523. Code § 707(b) does not give a license to the court to adopt an *ad hoc*, free-wheeling approach to sift out debtors the court finds distasteful." *In re Edwards*, 50 B.R. 933, 938 (Bankr.S.D.N.Y.1985); Bradley R. Tamm, *Substantial Abuse Dismissal under 11 U.S.C.A.*

*Trustee (In re Harris)*, 279 B.R. 254, 261 (9th Cir. BAP 2002) ("Moreover, the evidentiary value of the IRS standards is questionable: the [Trustee] provided no foundation explaining how the standards were calculated, based on what data, or how current that data might be. The Trustee analyst's supporting declaration was merely a hearsay reiteration of information obtained from the IRS website."). No such standard is promulgated in section 707(b), or in the legislative history. If Congress had wanted courts to utilize a means test founded upon cost-of-living standards established by the Internal Revenue Service, Congress would have explicitly expressed such a desire. *See, e.g., Harris*, 279 B.R. at 261 ("The [Trustee's] only evidence was the IRS standards and the schedules, but the bankruptcy court rejected the IRS standards as a measure of reasonableness. This was not error; neither the statute nor case law presently mandates use of those standards in the § 707(b) analysis."). In fact, prior to the enactment of section 707(b), it appears that legislators deleted a "future income threshold test" from the proposed amendment and replaced the mechanical test with the broad term "substantial abuse." Bradley R. Tamm, *Substantial Abuse Dismissal under 11 U.S.C.A. § 707(b): Evolution or Malignancy*, 13 J. Bankr.L. & Prac. 6 Art. 2 (2004); *Walton*, 866 F.2d at 983. Ultimately, the courts were given discretion to determine substantial abuse on a case-by-case basis.

Although the Court is concerned about the Debtor's financial condition, the Court will not dictate the Debtor's lifestyle, nor pass judgment on how the Debtor lives. The Court agrees with Judge Drake, who so astutely commented:

> Any determination of 'substantial abuse' necessitates some evaluation of the debt-

ors' expense and income statements, and thus some scrutiny of their personal spending habits, *In re Gyurci*, 95 Bankr. 639, 643 n. 3 (Bankr.D.Minn.1989), but this Court's role is not to formulate the debtors' budget. Instead, it is to act if there is clear evidence of abuse. The last line of § 707(b) grants a presumption in favor of granting relief to the debtor, and this presumption should apply when examining the debtors' schedules. A stricter interpretation would lead to non-uniformity and confusion as judges pass personal judgment about how people should spend their money.

*Tefertiller*, 104 B.R. at 514–15. *See also In re Attanasio*, 218 B.R. 180 (Bankr. N.D.Ala.1998). The Court believes that it should not exert such control over the Debtor's life; to do so would invite arbitrary decisions based on a judge's personal value judgments of the lifestyle of the debtors. The Court cannot determine where the Debtor should live. Should the Court question the Debtor's ability to obtain other housing, the availability of housing in a particular area, the Debtor's desire to remain in a certain school district, the type of housing available, the safety of the Debtor's neighborhood, the details of the Debtor's commute to work, the Debtor's sentimental ties to the home? Should the Court, for example, instruct the Debtor that she should have sold the home for a certain price and obtained another property for a certain price before she could be eligible for chapter 7 relief? The Court is not unmindful that the Debtor owns one of the more expensive homes in her county of residence. However, this Court believes that the 707(b) decision requires an analysis of all of the unique factors of each case.

■ The most fundamental goal of the Bankruptcy Code is to relieve an "honest

but unfortunate debtor" of his indebtedness, allowing him to make a "fresh start." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244–45, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *In re Haas,* 48 F.3d 1153, 1156 (11th Cir.), *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995); *Equitable Bank v. Miller (In re Miller),* 39 F.3d 301, 304 (11th Cir.1994); *Murphy & Robinson Inves. Co. v. Cross (Matter of Cross),* 666 F.2d 873, 879–80 (5th Cir.1982). *See Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("[A] central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' But in the same breath that we have invoked this 'fresh start' policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.' ") (internal quotations and citations omitted). "Those courts which have reviewed the legislative history [of section 707(b) ], have generally concluded that, in seeking to curb 'substantial abuse,' Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor." *Krohn,* 886 F.2d at 126. Here, there have been no allegations of dishonesty, and from the totality of the circumstances it is clear that the Debtor is in need of relief. In other words, the Debtor appears to be honest but has encountered unfortunate circumstances.

The Trustee has failed to carry its burden; the Court cannot find substantial abuse in the absence of detailed factual findings. The Trustee has not demonstrated factors indicative of dishonesty or lack of need, except for the size of the Debtor's mortgage.

[T]he fact that an expense appears excessive on its face does not excuse the requirement that a court's findings be based on evidence. Treating the judge's familiarity with local conditions as evidence renders any findings essentially unreviewable on the facts. While dismissal for substantial abuse is discretionary, the determination of abuse must be based on factual findings supported by admissible evidence, and not by what amounts to inappropriate judicial notice of the court's own value judgments.

*Harris,* 279 B.R. at 261. Moreover, the Debtor enjoys the explicit statutory presumption of entitlement to chapter 7 relief. The Court will give the Debtor the benefit of the doubt, especially since substantial abuse is not clearly present. *See Kelly,* 841 F.2d at 917. The Trustee has not presented sufficient evidence of substantial abuse, thereby failing to overcome the statutory presumption in favor of the Debtor. Since the sole basis of the dismissal would be the size of the Debtor's mortgage, the Court denies the Motion to Dismiss.

### III. CONCLUSION

Having considered the totality of the circumstances, which weigh in favor of the Debtor, the Court concludes that the granting of relief in this case would not be a substantial abuse of the provisions of chapter 7. The Debtor's ability to fund a hypothetical chapter 13 case if the Debtor's mortgage payment was reduced is not sufficient to justify dismissal pursuant to section 707(b). Furthermore, the Court finds that the Debtor's case should not be dismissed pursuant to section 707(a) for cause, including bad faith or lack of good faith.

**IT IS ORDERED** that the Motion to Dismiss be and is hereby **DENIED.**

The Clerk's Office is directed to serve a copy of this Order upon the Debtor, Debtor's Counsel, the United States Trustee, and the Chapter 7 Trustee.